IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. SARAH BEHNKE,<br><br>Plaintiffs,<br>v.<br><br>CVS CAREMARK CORP., CVS CAREMARK Rx, LLC (f/k/a CAREMARK Rx, INC.), CAREMARKPCS HEALTH LLC, and SILVERSCRIPT INSURANCE COMPANY,<br><br>Defendants. | No. 14-cv-0824 (MSG) |

**MEMORANDUM OF LAW IN SUPPORT OF AETNA'S
MOTION FOR PROTECTIVE ORDER
REQUIRING THE RETURN AND PROTECTION OF
ATTORNEY-CLIENT PRIVILEGED AND CONFIDENTIAL PROPRIETARY
DOCUMENTS AND INFORMATION, AND REDACTION OF PORTIONS OF THE
COMPLAINT CONTAINING INFORMATION TAKEN FROM THESE DOCUMENTS**

FREDERICK P. SANTARELLI
THOMAS J. ELLIOTT
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19244
fpsantarelli@elliottgreenleaf.com
txe@elliottgreenleaf.com
(215) 977-1000

ERIC W. SITARCHUK
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
eric.sitarchuk@morganlewis.com
(215) 963-4850

*Counsel for Aetna, Inc.*

Aetna Inc. ("Aetna") respectfully requests that the Court enter an order requiring Plaintiff Sarah Behnke ("Plaintiff" or "Behnke") and her counsel, Berger & Montague, P.C. ("Berger") (and any and all others to whom they may have disclosed Aetna's privileged and confidential information) to (1) return to all of Aetna's records that are attorney-client privileged, attorney work product, and confidential and proprietary business information, and destroy all copies of such records, which she had taken in her capacity as an employee of Aetna; (2) state and certify under penalty of perjury that they destroyed all copies of Aetna records in her possession, and provide and certify under penalties of perjury an accounting identifying each person to whom Plaintiff or her counsel has provided Aetna's records and information; (3) refrain from any use of such records or information (by Behnke herself and her counsel); and (4) redact certain paragraphs of the Complaint containing direct references to Aetna's privileged and confidential records and information.

**I.     BACKGROUND**

By Order docketed April 4, 2018, the Complaint was unsealed, revealing to Aetna for the first time that confidential, proprietary, and privileged materials—including but not limited to records and communications involving Aetna's in-house and outside counsel—had been taken without Aetna's authorization and disclosed to third parties, such as personal counsel for Behnke, for Behnke's and her counsel's personal self-interest purposes to bring a lawsuit demanding they recover money for themselves through a False Claims Act case.

Aetna learned of this loss and unauthorized disclosure of confidential and privileged materials after the Complaint was recently unsealed following the Government's decision not to pursue the case. Aetna acted immediately to protect its interests, promptly notifying Berger via

letter, that it was aware Berger may have had access to, was in possession of, and/or was using restricted, confidential and proprietary information, as well as attorney-client privileged information belonging to Aetna.

Through Aetna's internal attorney-client privileged investigation into the loss of its information, Aetna determined that Behnke had, in fact, taken Aetna's property for her and her counsel's own use in pursuing a monetary recovery for themselves in this lawsuit, and that they have continued their unauthorized possession of Aetna's property and information for at least four years through the present. Aetna's investigation into these matters has continued.

Counsel for Aetna requested that Berger and Behnke, along with anyone else who may have received any documents or information that Behnke received through her employment at Aetna, return all such documents and destroy any copies, electronic or otherwise. To address potential concerns regarding preservation of the documents for possible use in litigation, Aetna agreed that it would maintain the documents and information so that they would be available if and to the extent they were later subpoenaed in the litigation, subject to the protections under applicable law as well as the procedural protections governing discovery from non-parties such as Aetna.

Aetna filed a Motion for Leave to File Under Seal the instant motion, in the interest of ensuring that any details of its internal attorney-client privileged investigation were protected from any claimed waiver, and to further protect from any further loss of information through having to assert its rights in this Court to preserve confidentiality of its information.

In response to Aetna's motion, the Court conducted an on-the-record conference call concerning the Motion to Seal and directed Aetna to file the instant motion without

providing herein any detail that would be privileged and confidential or disclose Aetna's matters from internal attorney-client privileged investigation into the matter. Accordingly, Aetna hereby files this Motion consistent with the Court's direction at the on-the-record conference call and the Order dated June 4, 2018.

## II. ARGUMENT

Consistent with the Court's instructions during the on-the-record telephone conference held on May 31, 2018, Aetna is filing this motion so that the Court may address Aetna's assertion of privilege over the materials in Berger's and Ms. Behnke's possession. Aetna requests entry of a reasonable protective order that would protect the privilege and Aetna's rights, while causing no harm or prejudice to any party in this case.

### A. The Court's Inherent Powers

A federal court possesses inherent equitable power that it may exercise to prevent abuses, oppression, and injustice. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–45 (1991). This is in addition to the court's "inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provid[ing] authority to fashion tools that aid the court in getting on with the business of deciding cases." *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 567 (3d Cir. 1985); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962) (noting that courts are "necessarily vested" with "control . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

"[T]he inherent power extends to a full range of litigation abuses," *id.* at 46, and thus a court "may . . . use this inherent power to compel the return of improperly obtained evidence." *Spencer v. Pottstown Sch. Dist.*, No. 16-5841, 2018 U.S. Dist. LEXIS 23162, *18, 2018 WL 835088; *see also Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 324 (S.D.N.Y. 1997)

4

("Pursuant to this inherent authority, a court must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct.").

"Pennsylvania courts have recognized that 'an attorney receiving confidential documents has ethical obligations that may surpass the limitations implicated by the attorney-client privilege and that apply regardless of whether the documents in question retain their privileged status.'" *Burt Hill, Inc. v. Hassan*, No. 09-1285, 2010 U.S. Dist. LEXIS 7492, *12 (W.D. Pa. 2010). "It is these principles that underlie the oft-cited protocol directing counsel, upon discovering the confidential nature of documents, to cease review, notify the owner, and abide by the owner's instructions regarding the documents' disposition."[2] *Id.*

In light of the foregoing principles, federal courts have held that a party cannot use in litigation or otherwise retain confidential or privileged documents improperly obtained by its opponent's current or former employees. *See, e.g.*, *Hill,* 2010 U.S. Dist. LEXIS 7492, *22–23 (finding that "the appropriate sanction" against defense counsel for reviewing the plaintiff's privileged and confidential materials, which had been improperly obtained, was "to prohibit Defendants and their lawyers from in any way benefiting from their retention and review of Plaintiff's privileged and confidential materials"); *Lahr v. Fulbright & Jaworski, L.L.P.*, 1996 U.S. Dist. LEXIS 20133, at *2–3 (N.D. Tex. July 10, 1996) (prohibiting plaintiff from using

---

[2] Rule 4.4(b) of the Pennsylvania Rules of Professional Conduct states that "[a] lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender." Pa. R.P.C. 4.4(b). Although "this Rule does not address the legal duties of a lawyer who receives a document that the lawyer knows or reasonably should know may have been wrongfully obtained by the sending person," *id.* at cmt. 2, it seems wrongheaded to suggest that intentional and unauthorized disclosure—as opposed to inadvertent—means a court should "conclude that nothing can or should be done to protect or ameliorate the document owner's privilege and confidentiality interests." *Hill*, 2010 U.S. Dist. LEXIS 7492, at *10.

5

certain private notes of the defendant's partner that had been misappropriated by the defendant's former employee); *In re Shell Oil Refinery*, 143 F.R.D. 105, 108 (E.D. La. 1992) (ordering with regard to certain incriminating documents misappropriated by employee that "[t]he plaintiffs may not make any use of the documents obtained from the [defendant]-employee source or any use of the information contained therein, including keeping any copies or notes of the information contained in the documents, unless the documents are publicly available or were previously produced by [the defendant]."). As a court reasoned in addressing the acquisition of a privileged document (the "Clark letter") outside of the discovery process:

> [T]he plaintiff's receipt of the Clark letter in this manner was inappropriate and contrary to fair play. The acquiring of the Clark letter by the plaintiff was more than informal fact-gathering. The plaintiff effectively circumvented the discovery process and prevented [the defendant] from being able to raise any objections against the production of the letter. Had the plaintiff sought to obtain the letter through the discovery process, [the defendant] would have had an opportunity to prevent its production by asserting the attorney-client privilege.

*Giardina v. Ruth U. Fertel*, No. 00-1674, 2001 U.S. Dist. LEXIS 21804, *8–9 (E.D. La. Dec. 18, 2001) (citation omitted).

### B. The Attorney-Client and Work Product Privileges

The attorney-client privilege is the oldest recognized and, arguably the most sacred, common law privilege; its "purpose is to encourage full and frank communication between attorneys and their clients and, thereby, promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). In order for the privilege to apply, "it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011).

The work product doctrine is broader than the attorney-client privilege and its standard is contained in Fed. R. Civ. P. 26(b)(3). *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1255 (3d Cir. 1993). Rule 26(b)(3)(A) states that, "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). Additionally, "core" or "opinion" work product, such as "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative" qualifies for greater protection than "fact" work product. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (quotations and citation omitted).

Recognizing the sanctity of these privileges, courts frequently find that unauthorized disclosures warrant sanctions, including attorney disqualification. In *Hill*, a court in the Western District of Pennsylvania collected and summarized the following examples:

> [C]ourts have sanctioned attorneys for [unauthorized disclosures]. *See, e.g.*, *S.E.C. v. Brady*, 238 F.R.D. 429, 445 (N.D. Tex. 2006) ("[f]ederal courts have authority to remedy litigation practices that threaten judicial integrity and the adversary processes," and "[s]uch inherent authority includes the ability to exclude 'proprietary' documents obtained . . . outside the context of formal discovery") (citation to quoted source omitted); *Knitting Fever, Inc. v. Coats Holding Ltd.*, 2005 U.S. Dist. LEXIS 28435, 2005 WL 3050299, *1, 4 (E.D.N.Y. Nov. 14, 2005) (where plaintiffs obtained documents from "an undisclosed . . . employee" of defendants, plaintiffs' counsel had "a clear ethical responsibility to notify [defense] counsel and either follow the latter's instructions with respect to the disposition of the documents or [to] refrain from using them pending ruling by the [c]ourt"); *Arnold v. Cargill Inc.*, 2004 U.S. Dist. LEXIS 19381, 2004 WL 2203410, *7-10 (D. Minn. Sept. 24, 2004) (disqualifying plaintiffs' counsel for using "privileged and/or confidential" documents, obtained from defendant's former employee); *Lahr v. Fulbright & Jaworski, L.L.P.*, 1996 U.S. Dist. LEXIS 20133, 1996 WL 34393321, *2-4 (N.D. Tex. Jul. 10, 1996) (affirming magistrate judge's grant of protective order regarding former employee of defendant's unauthorized transmission of "proprietary" documents); *see also, e.g.*, *Giardina v. Ruth U. Fertel Inc.*, 2001 U.S. Dist. LEXIS 21804, 2001 WL 1628597, *1-3 (E.D. La. Dec. 17, 2001) (holding same where plaintiff "refuse[d] to reveal how he obtained" defendant's letter); *In re Shell Oil Refinery*, 143 F.R.D. 105, 107-109 (E.D. La. 1992) (same where plaintiffs' counsel obtained documents from defendant's unidentified employee). Any suggestion that Defense counsel's receipt and retention of the September Documents carried no ethical concerns

7

would come not from a careful study of the applicable law, but rather from a failure to appreciate it.

*Hill*, 2010 U.S. Dist. LEXIS 7492, at *15–16.

This Court has held that "[the] inquiry in determining whether the communications at issue are privileged . . . must be whether those communications were for the purpose of obtaining legal advice, and not whether those communications contained facts." *King Drug Co. of Florence v. Cephalon, Inc.*, Nos. 06-1797, 08-2141, 2013 U.S. Dist. LEXIS 129472, *22–23 (E.D. Pa. Sept. 11, 2013) (Goldberg, J.). In undertaking this inquiry, the Court is "mindful that the purpose of the privilege is to protect 'those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" *Id.* at *24 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). "Whether a particular communication was made for legal or business purposes is largely a factual determination, and one which must be made on a case by case basis." *Id.* (citing *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 230–31 (3d Cir. 2007)).[3] Bearing these principles in mind, this Court determined in *King Drug* that even documents created by non-attorney employees deserved protection because "those communications were for the purpose of gathering information necessary for [the employer]'s attorneys to render legal advice, or were made in order to disseminate legal advice from those attorneys throughout the company." *Id.* at *37–38.

---

[3] This may necessitate the Court's *in camera* review of the documents, even if a privilege log is provided. *See id.* ("[A]lthough [the party asserting privilege] submitted a detailed privilege log and several affidavits in support of its argument that the communications at issue were legal in nature and therefore properly withheld, the log descriptions and the affidavits were too general to permit the Court to resolve the dispute without reviewing the communications themselves.").

## C. Privilege for Corporate Investigations and Confidential Business Information

The Supreme Court has taught that an "uncertain privilege . . . is little better than no privilege at all." *Upjohn Co.*, 449 U.S. at 393. Thus, the devout protection of the attorney-client privilege and work-product doctrine does not change when an attorney is conducting a corporate investigation. *See id.* at 390. Courts must take care to ensure proper protection of privileged materials given the " 'the vast and complicated array of regulatory legislation confronting the modern corporation' which required corporations to 'constantly go to lawyers to find out how to obey the law, . . . particularly since compliance with the law in this area is hardly an instinctive matter.' " *In re Kellogg Brown & Root*, 756 F.3d 754, 757-60 (D.C. Cir. 2014) (quoting *Upjohn Co.*, 449 U.S. at 392).

When a corporation undertakes an investigation to "ensure compliance with the law" there can be no doubt that the privilege will apply to protect the confidential communications exchanged during the investigation. *Id.* at 757-60 (finding investigation undertaken by corporation privileged in context of False Claims Act). The attorney-client privilege not only protects the giving of legal advice to those who can act on it but the "giving of information to the lawyer to enable him to give sound and informed advice." *Id.* This necessarily includes the interviewing of employees and other investigative tools an attorney uses to gain the facts required to render advice. *See Ziner v. Cedar Crest College*, No. 04-3491, 2006 U.S. Dist. LEXIS 34858, at *6-11 (E.D. Pa. May 30, 2006). As this Court summarized:

> [A]n attorney who investigates complaints and conducts interviews within a company or an organization retains the same entitlement to the attorney-client privilege as if he or she were offering pure legal advice.

*Id.* (citing *Upjohn Co.*, 449 U.S. at 390); *see also In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006). Where a corporation undertakes an investigation to obtain or provide

9

legal advice—through in-house or outside counsel—the privilege will apply. *In re Kellogg Brown & Root*, 756 F.3d at 760.  It does not matter whether the corporation does so pursuant to "a company compliance program required by statute or regulation, or was otherwise conducted pursuant to a company policy." *Id.*

The Third Circuit has recognized that confidential and proprietary business information is worthy of protection as disclosure of such materials would work a clearly defined harm on the party.  *See Miller v. Indiana Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157 (3d Cir. 1993); *Mosaid Techs., Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 507 (D. Del. 2012); *Rose v. Rothrock*, No. 08-3884, 2009 U.S. Dist. LEXIS 37032, at *23-24 (E.D. Pa. Apr. 29, 2009).  This general proposition is directly enshrined in Federal Rule of Civil Procedure 26(c).  Moreover, parties improperly obtaining confidential and proprietary trade secret and business information can face liability for misappropriation.  *See Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1228-32 (Pa. Super. Ct. 1989). Simply, an employee cannot obtain confidential and proprietary business information from their employer and use it to their own personal benefit to enrich themselves at the expense of the employer.  *See Merrill Lynch v. Masri*, No. 96-3804, 1996 U.S. Dist. LEXIS 7184, at *4 (E.D. Pa. May 26, 1996) (citing *John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 369 A.2d 1664, 1167 (Pa. 1977).

Against the backdrop of the False Claims Act, courts consider the disclosure of confidential and proprietary information most often as it relates to the "strong public policy against counterclaims in qui tam actions."  *Walsh v. Amerisource Bergen Corp.*, No. 11-7584, 2014 U.S. Dist. LEXIS 82064, *13 (E.D. Pa. June 16, 2014)   Judge Surrick recently observed that "courts have taken differing views" on the "specific question of whether the enforcement of

a confidentiality agreement runs contrary to the purpose of the FCA." *Id.* at *16; *see also id.* at *16–21 (collecting and summarizing cases).

In that case, the defendants' amended counterclaim was allowed to proceed past the motion to dismiss stage on the basis that "the damages sought by Defendant[s] are alleged to be the result of Relator's breach of a validly executed confidentiality agreement." *Id.* at *22. Analogizing to a similar case in the Ninth Circuit, Judge Surrick explained as follows:

> As in *Caffasso*, it is possible to conceive of a case in which Defendants are found to be not liable under the FCA, while prevailing on their Amended Counterclaim for violation of the confidentiality agreement. Defendants' Amended Counterclaim, which is not predicated upon a finding of liability under the FCA, is not a claim for indemnification. We will not bar it on those grounds.
>
> \* \* \*
>
> The Amended Counterclaim alleges that Relator took "a large variety of [Defendants] confidential, proprietary and privileged information . . . ." (Am. Countercl. ¶ 27.) While it is certainly possible that the entirety of this information is required to prove Relator's claim, it is simply too early to know for sure. This is especially true given Relator's failure to make any kind of particularized showing. **For example, Relator's Motion fails to provide any justification in response to Defendants' allegation that he disclosed to his personal attorneys, information that was protected by the attorney-client privilege**.

Id. at *22–23 (emphasis added).

In a more recent case in the Northern District of Illinois, a court reached the opposite conclusion and the dismissed the defendant's counterclaim without prejudice. *See United States ex rel. Cieszynski v. LifeWatch Servs.*, No. 13-4052, 2016 U.S. Dist. LEXIS 68867, *17 (N.D. Ill. May 13, 2016). Notably, however, the relator in this case "did not disclose the information to anyone other than the government and his attorney, did not disclose attorney-client information, and did not disclose trade secret information to [the defendant]'s competitors." *Id.* The court distinguished *Walsh* on precisely this basis:

> [T]he other cases on which [the defendant] relies also involved relators who engaged in behavior that caused damages that went beyond exposing defendant to a qui tam suit. For example, in Walsh v. Amerisource Bergen Corp., **the relator had no justification in response to allegations that he took and disclosed to the public and others documents that were protected by the attorney-client privilege**. Further, the counterclaim alleged that the documents contained trade secrets, the public disclosure of which could cause irreparable business harm.

*Id.* at *13–14 (emphasis added) (internal citation omitted).

### D. Discussion

The Court should order the immediate return of all documents that Behnke took from Aetna, because these items are Aetna's property, and many contain confidential, proprietary, and privileged information that belongs to Aetna. They should never have been taken without Aetna's permission, or disclosed to or used by Berger, in the first place. Further, the Court should preclude Berger from using, distributing, or continuing to possess any of these documents, all of which have been improperly obtained, in order to allow Aetna the opportunity to prevent the production of its privileged and protected information.

Like the parties in the above-cited cases, it is clear that Berger's conduct threatens "the integrity of the judicial process" by seeking to make use of evidence obtained "unfairly and outside the context of formal discovery." *Lahr*, 1996 U.S. Dist. LEXIS 20133, at *5–6, *11. It is no defense that this information might have been somehow otherwise discoverable. *See Shell*, 143 F.R.D. at 108; *Giardina*, 2001 U.S. Dist. LEXIS 21804, at *8–9. To the extent Berger wishes to obtain these documents for use in litigation, it will have an opportunity to seek out the documents during formal discovery—and Aetna, for its part, will have an opportunity raise objections based on, *inter alia*, the assertion of attorney-client privilege. Berger should not be allowed to "circumvent[] the discovery process and prevent[] [Aetna] from being able to raise

any objections against the production" of the documents containing its confidential, proprietary, and privileged information. *Giardina*, 2001 U.S. Dist. LEXIS 21804, at *8–9.

Additionally, the Court should order redaction of the following paragraphs of the Complaint, each of which specifically stems from the unauthorized disclosure of Aetna's privileged materials: ¶¶ 86, 96, 97, 98, 102, 104, 108, 109, 110, 115, 116.  Each of these paragraphs relies directly upon a document inappropriately taken from Aetna by Behnke, and most of these paragraphs go so far as to directly quote these documents.[4]  The proposed redactions are thus "as narrow as possible" and apply to only 11 of the 175 paragraphs total in the Complaint. *Del. Display Grp. LLC v. LG Elecs. Inc.*, 221 F. Supp. 3d 495, 497 (D. Del. 2016).

## III.   CONCLUSION

For the foregoing reasons, Aetna respectfully requests that this Court grant its motion and require that Berger immediately return Aetna's confidential, proprietary, and privileged records, destroy all copies thereof and certify under penalty of perjury all copies have been destroyed, account for and identify each person to whom Plaintiff or her counsel has provided Aetna's records and information under penalties of perjury, refrain from making any use of these records or any of the information contained therein, and redact certain paragraphs of the Complaint derived from Aetna's privileged and confidential records and information.

Aetna further requests a hearing to be conducted to afford Aetna the opportunity to present any such materials *in camera* to the extent the Court deems the need to do so in order to grant the relief requested herein.  Based on its attorney-client privileged investigation to date, which is ongoing, Aetna has compiled a list of materials that it has determined, thus far, were

---

[4] The paragraphs that directly quote Aetna's privileged materials include ¶¶ 108, 109, 110, 115, 116.

taken by Behnke and provided to her counsel.  Aetna will provide that list under seal and/or in camera for the Court's inspection.

Aetna reserves the right to request other relief that it may determine to be necessary for the protection of its property and information.

Dated: June12, 2018                                   Respectfully submitted,

*/s/ Frederick P. Santarelli*
Frederick P. Santarelli
Thomas J. Elliott
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19244
fpsantarelli@elliottgreenleaf.com
txe@elliottgreenleaf.com
(215) 977-1000

*/s/ Eric W. Sitarchuk*
Eric W. Sitarchuk
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
eric.sitarchuk@morganlewis.com
(215) 963-4850

*Counsel for Aetna Inc.*