**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA, ex rel.**<br>**SARAH BEHNKE,**<br><br>       **Plaintiffs,**<br>  **v.**<br><br>**CVS CAREMARK CORP., CVS CAREMARK**<br>**Rx, LLC (f/k/a CAREMARK Rx, INC.),**<br>**CAREMARKPCS HEALTH LLC, and**<br>**SILVERSCRIPT INSURANCE COMPANY,**<br><br>      **Defendants.** | **No. 14-cv-0824 (MSG)** |

**AETNA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**
**REQUIRING THE RETURN AND PROTECTION OF ATTORNEY-CLIENT**
**PRIVILEGED AND CONFIDENTIAL PROPRIETARY DOCUMENTS AND**
**INFORMATION, AND REDACTIONS OF PORTIONS OF THE COMPLAINT**
<u>**CONTAINING INFORMATION TAKEN FROM THESE DOCUMENTS**</u>

Relator Sarah Behnke's ("Behnke") Response in Opposition to Aetna Inc.'s ("Aetna")

Motion for Protective Order attempts to frame Aetna's actions as retaliatory against Behnke and

turn this into separate FCA retaliation litigation. Behnke's rehashing of her employment history

is irrelevant to this matter and Behnke does not demonstrate how Aetna is purportedly

"retaliating" against her. Aetna is properly protecting its rights by asserting privilege and

confidentiality over documents which are Aetna's property in the first instance. Contrary to

Behnke's assertions, the False Claims Act ("FCA") does not completely immunize a relator from

the consequences of misappropriating and using privileged and confidential information.

Moreover, Behnke's response fails to demonstrate why Aetna's requested relief should not be

granted. Instead, Behnke complains Aetna did not reveal attorney-client privileged information

in its Motion and completely ignores the directive of the Court at the May 31, 2018 on-the-

record telephone conference, wherein the Court directed Aetna to file its Motion not under seal and without revealing privileged information.  Behnke completely ignores the Court's direction and now feigns outrage over Aetna's compliance.

**I.     The Court Directed Aetna to File Its Motion Not Under Seal Without Revealing Privileged Or Confidential Information.**

At the May 31, 2018 on-the-record telephone conference, the Court denied Aetna's Motion for Leave to file the instant motion under seal.  Instead, the Court directed Aetna to file its Motion for Protective Order without revealing the nature of the privileged or confidential materials.  During the telephone conference, Aetna made clear it would comply with the Court's directions with the expectation that Behnke would not object to Aetna's Motion because it lacked specificity as to the documents over which it asserted the privilege or confidentiality.

Now, in her response to Aetna's motion, Behnke complains that Aetna did not list the specific documents over which Aetna asserts privilege or confidentiality.[1]  If Behnke and her counsel had their way, she would have Aetna file all privileged material in the public record and then argue Aetna waived any and all privileges.  The Court determined Aetna could file its Motion for Protective Order without revealing attorney client or confidential information and Aetna followed the Court's direction in doing so.  In fact, the Court's June 4 Order denying Aetna's Motion for Leave specifically states that "[s]hould the Court—after considering such a motion and any responses thereto—require additional information or documents, Aetna, Inc. may be directed to provide such information or documents for review *in camera*."  (ECF Doc. No. 39) The Court did not require Aetna to submit its privileged and confidential information to the Court, or even endeavor to describe the materials, in support of this Motion.

---

[1]  Behnke also provides a block quotation from Aetna's Memorandum of Law in Support of Its Motion for Leave to File Under Seal (Resp. in Opp., at 1.)  As of the filing of this reply brief, that motion is still under seal and not available for public viewing on the docket.

Moreover, while Behnke and her counsel contend they do not know which documents Aetna maintains are privileged (*see* Resp. in Opp., at 2, 14-15), they are well aware which documents Aetna has expressly claimed are covered by the attorney-client privilege and work-product doctrine as Aetna's counsel explicitly informed Behnke's counsel of such.  Behnke's position further underscores the need for a hearing and an *in camera* review of the documents in question to aid in the Court's determination.

Finally, the redactions proposed by Aetna are entirely reasonable given the potential harm of disclosure.  These redactions are necessary as Behnke and her counsel derive this information contained in the specific paragraphs from Aetna's privileged materials.  Behnke does not and cannot argue the proposed redactions are unreasonable and Aetna should be awarded its requested relief.

**II.     The FCA Does Not Allow Relators To Misappropriate And Use Privileged Information.**

Behnke paints in broad strokes as she attempts to side step her taking of privileged information.  She argues that it would defy "common sense and the entire FCA procedural structure" to require Behnke to return the privileged information she took from Aetna without authorization.  (*See* Resp. in Opp., at 8).  Moreover, Behnke and her counsel try to deflect from their inappropriate use of privileged information by claiming ignorance over the materials they have in their possession.  (*Id.* at 14-15.)  But the FCA does not allow a relator or her counsel to obtain privileged information for use in a *qui tam* case through the course of normal discovery, nor does it allow a relator or her counsel to obtain and utilize such information through self-help discovery.  The FCA does not protect either Behnke or her counsel from the consequences of their actions.

The FCA does not immunize Behnke or her counsel from consequences of taking privileged documents and information from Aetna. *See United States v. IASIS Healthcare Corp.*, No. 05-766, 2012 U.S. Dist. LEXIS 6896, at *45-46 (D. Ariz. Jan. 10, 2012). In *IASIS*, relator's counsel received privileged documents from the relator in advance of preparing a *qui tam* complaint. *Id.* at * 13-16. Relator's counsel received the documents and set them aside after allegedly realizing they contained attorney-client information. *Id.* Two years later, and after the complaint was unsealed, the defendant company contacted relator's counsel and informed them that it believed the relator had misappropriated privileged information and demanded the immediate return of the documents. *Id.* at *16. Relator then filed for *in camera* review of the documents and a privilege determination by the court. *Id.* at *18. The company filed for return of the documents, as well as sanctions against the relator and his counsel seeking disqualification from the case. *Id.* at *33.

The court granted the company's motion for sanctions against the relator's counsel on the basis that counsel engaged in misconduct with regard to the privileged documents it received. *Id.* at *43-45. In doing so, the Court noted that counsel had known it had privileged information of the company prior to filing the *qui tam* suit and breached its ethical duty by not seeking a ruling from the court about the privileged documents. *Id.* at * 44. In short the court found counsel "did engage in misconduct by withholding [IASIS's] documents and failing to seek either a court ruling while the case was sealed or failing to contact IASIS after the seal was lifted." *Id.* at *44-45. As sanctions, the court required relator's counsel to pay the attorney's fees and costs incurred by the company in its "attempt to get its privileged documents back from Qui Tam Counsel." *Id.* at *45. Moreover, the court disqualified relator's counsel from "assisting or representing [the relator] or any other party adverse to IASIS." *Id.*

4

Much like the relator and counsel in *IASIS*, Behnke and her counsel failed to act when they knew they possessed privileged materials belonging to Aetna.  Behnke and her counsel did not seek a ruling from this Court prior to filing this *qui tam* suit and certainly made no effort upon the unsealing of the complaint to do so.  It was Aetna who had to force Behnke and her counsel to even admit they had privileged documents.  Even then, they would not agree to Aetna's reasonable request to return the documents without prejudice to their subpoenaing Aetna for the records in the course of discovery.  Behnke and her counsel have done nothing to remedy their misconduct relating to Aetna's privileged documents.  *See id.*; *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. 08-1885, 2013 U.S. Dist. LEXIS 74833, at *4-12 (C.D. Cal. May 20, 2013) (disqualifying relator's counsel after failing to take "no such reasonable remedial action to address privilege issues").  Given the holding in *IASIS*, as well as *Hartpence*, Behnke and her counsel cannot continue to possess Aetna's privileged information and must return it immediately.[2]

The United States Attorney's Manual ("Manual") also provides insight into how closely the attorney-client privilege should be protected in false claims litigation.  The Manual provides that when, in the course of an investigation, the investigative team "may encounter material protected by a legitimate claim of privilege" the team must exercise "close control" over such a search.  *See* United States Attorney Manual, at § 9-13.420.[3]  It further provides that

---

[2] While Aetna does not seek disqualification of Behnke's counsel in its Motion, it reserves the right to seek such relief in the future.

[3] Title 9 of the Manual relates to criminal matters.  While the FCA does not have criminal component, the so-called "criminal false claims act" provides the Government the ability to bring criminal charges against any person making false claims to the Government.  *See* 18 U.S.C. § 287.  Accordingly, it is likely the United States uses the same investigative procedures during a civil FCA suit it does during a criminal false claims action, including setting up specific procedures for the handling of privileged information.

"[p]rocedures should be designed to ensure that privileged materials are not improperly viewed, seized or retained . . . ."  *Id.* at ¶ D.  The Manual sets forth comprehensive guidelines for the receipt, handling, and review of potential attorney-client privileged documents.  Here, it is unclear whether Behnke or her counsel provided Aetna's privileged information to the United States in an attempt to have it join her lawsuit but the conduct of Behnke and her counsel stands in contrast to the procedure outlined in the Manual.

The FCA does not provide a relator carte blanche to have any privileged documents of the company, even if the relator might believe they are relevant to her FCA suit.  If an FCA relator could defeat the attorney-client privilege by simply taking privileged documents and filing an FCA suit, it would lead to widespread disclosure of privileged information, chilling of frank communications between client and counsel, and evaporation of the attorney-client privilege in any investigatory setting.  Behnke had no legal right to take the privileged information.  Moreover, Behnke's counsel violated their own duty to act in the face of privileged material in its possession.  Combined, Behnke and her counsel's misconduct have caused Aetna serious harm: revealing its attorney-client privileged information.  Accordingly, Aetna respectfully requests this Court grant its Motion, or in the alternative order a hearing for Aetna to present evidence of the privileged documents Behnke has in her possession.

## III.    There Is No Blanket Protection Under the FCA For A Relator Who Removes Confidential and Proprietary Documents From Her Employer.

Behnke invokes an alleged blanket protection under the FCA, which allows her to take whichever documents she chooses from Aetna and use them in her FCA suit.  But no such blanket protection exists and in fact courts have decided against providing blanket protection for relators who have misappropriated confidential and proprietary documents from their employer. As Behnke notes, Aetna's Code of Conduct requires Aetna employees to maintain the

confidentiality of restricted, confidential, and proprietary information under the control of each Aetna employee. Further, it is accurate that the Aetna Code of Conduct encourages employees to report violations of the Code of Conduct or any illegal activity any employee may suspect. The Code of Conduct does not, however, authorize or even encourage employees to take restricted, confidential, and proprietary, as well as privileged documents, to use in their own lawsuits. Behnke's work commendations are irrelevant to the instant matter between Behnke and Aetna and her reliance on those to deflect from her taking of company documents is a red herring.

Behnke contends that the relief Aetna is seeking is "antithetical to the entire *qui tam* structure." (Resp. in Opp., at 7.) According to Behnke, requiring a relator to return documents she took from her company, which she knows to be restricted, confidential, and proprietary, as well as privileged, defies "common sense." (*Id.* at 8.) Essentially, Behnke is advocating for an absolute protection for relators who take company documents, without any exceptions.[4] Contrary to Behnke's assertion, the courts do not provide blanket protection to FCA relators who have misappropriated confidential and proprietary information in violation of confidentiality restrictions and reject such a broad application of any protection. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,* No. 06-1381, 2009 U.S. Dist. LEXIS 43154, at *39-40 (D. Ariz. May 21, 2009), *aff'd by Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1062 (9th

---

[4] The cases relied upon by Behnke do not support her position. In two cases, the court actually allowed an employer's claims for breach of contract against the relator to survive a motion to dismiss. *See United States ex rel. Notorfrancesco v. Surgical Monitoring Assoc.*, 2014 U.S. Dist. LEXIS 172044 (E.D. Pa. Dec. 12, 2014) (allowing employer's counterclaim for breach of contract to survive dismissal); *Siebert v. Gene Sec. Network*, No. 11-1987, 2013 U.S. Dist. Lexis 149145, at *21-28 (N.D. Cal. Oct. 16, 2013) (same). In *United States ex rel. Head v. Kane Co.*, 668 F. Supp. 2d 146, 152 (D.D.C. 2009), the Court dismissed a company's counterclaim for breach of contract where it only sought the return of a single document, which was integral to the employee's *qui tam* complaint. 668 F. Supp. 2d at 151-52. That case did not deal with a broad array of documents like the instant case.

Cir. 2011) (rejecting a broad application of any protection to FCA relators); *United States ex rel. Mossey v. Pal-Tech Inc.*, 231 F. Supp. 2d 94 (D.D.C. 2004) (recognizing an employer had a viable counterclaims against employee for breach of contract and misappropriation of trade secrets).  In *Cafasso*, the district court granted summary judgment on the employer's breach of contract claim finding:

> Public policy does not immunize Cafasso.  Cafasso confuses protecting whistleblowers from retaliation for lawfully reporting fraud with immunizing whistleblowers for wrongful acts made in the course of looking for evidence of fraud.

2009 U.S. Dist. LEXIS 43154, at *39.  Consequently, the court enforced a confidentiality agreement over the public policy considerations afforded an FCA relator.  If a "public policy" exception to confidentiality agreements were to apply, the burden would be on the relator to prove "why the removal of the documents was reasonably necessary to pursue an FCA claim." *Cafasso*, 637 F.3d at 1062.

Moreover, numerous courts have held that employers may have viable claims against a relator who misappropriates confidential and proprietary information.  *See United States ex rel. Wildhirt v. AARS Forever, Inc.*, 2013 U.S. Dist. LEXIS 133982, at * 13 (N.D. Ill. Sept. 19, 2013); *Walsh v. Amerisource Bergen Corp.*, 2014 U.S. Dist. LEXIS 82064 (E.D. Pa. June 17, 2014); *United States ex rel. Notorfrancesco v. Surgical Monitoring Assoc.*, 2014 U.S. Dist. LEXIS 172044 (E.D. Pa. Dec. 12, 2014).  In each of these cases the court recognized that an employer may have viable claims against a relator where the claims did not have the effect of acting as claims for "indemnification or contribution."  *Notorfrancesco*, 2014 U.S. Dist. LEXIS 172044, at *11-12.  Faced with such claims, an FCA relator would need to prove that the materials were "reasonably necessary" to the FCA suit to avoid being restricted from using the misappropriated documents.  *Id.*

8

As the above cases illustrate, Behnke's claim that requiring her to return the documents she took from Aetna would "nullify the entire *qui tam* process" is overblown. There is no broad public policy exception to confidentiality restrictions placed on employees and an employee who misappropriates confidential information may still face consequences including the prohibiting of their use of the purloined documents. *See id.* Behnke took numerous documents that were not only confidential, but also privileged, and in violation of Aetna's Code of Conduct. Moreover, many of these documents are not relevant to her FCA claim. Accordingly, Behnke, as well as her counsel, should not be afforded blanket protection under the FCA for misappropriating confidential and privileged information from Aetna to use in her lawsuit.

## IV.     CONCLUSION

For the foregoing reasons, Aetna respectfully requests that this Court grant its Motion and enter a protective order requiring Behnke and her counsel to immediately return Aetna's confidential, proprietary, and privileged records, destroy all copies thereof and certify under penalty of perjury all copies have been destroyed,  account for and identify each person to whom Plaintiff or her counsel has provided Aetna's records and information under penalties of perjury, refrain from making any use of these records or any of the information contained therein, and redact certain paragraphs of the Complaint derived from Aetna's privileged and confidential records and information.

Respectfully submitted,

*/s/ Frederick P. Santarelli*
Frederick P. Santarelli
Thomas J. Elliott
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
fpsantarelli@elliottgreenleaf.com
txe@elliottgreenleaf.com
215) 977-1000

*/s/ Eric W. Sitarchuk*
Eric W. Sitarchuk
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
eric.sitarchuk@morganlewis.com
(215) 963-4850

*Counsel for Aetna Inc.*

Dated: July 5, 2018