IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* SARAH BEHNKE,  :  Plaintiffs,  :  v.  :  CVS CAREMARK CORPORATION, *et al.*,  :  Defendants.  : | CIVIL ACTION  No. 14–cv–824 |

FILED
APR 23 2019
KATE ᴇ . . . . . Clerk
By_____ Dep Clerk

## ORDER

**AND NOW**, this 23rd day of April, 2019, upon consideration of the "Motion for Protective Order" filed by Non-Party Movant Aetna, Inc. (Doc. No. 41), and the Response, Reply, and Surreply thereto, I find as follows:

### FACTUAL AND PROCEDURAL BACKGROUND

1. On February 6, 2014, Sarah Behnke ("Relator") brought this *qui tam* action on behalf of the United States, pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.* Relator's Complaint alleges that Defendants—CVS Caremark Corporation, CVS Caremark Rx, LLC; Caremark PCS Health LLC; and SilverScript Insurance Company—engaged in a scheme to defraud the government by falsely reporting certain price information for prescription drugs subsidized by the government under Medicare Part D.

2. On April 4, 2018, shortly after the United States notified me that it would not intervene, this case was unsealed.

1

3. On May 8, 2018, Relator's employer, Aetna, Inc. ("Aetna")—which is not currently a party to this action—filed a "Motion for Leave to File Under Seal a Motion for Limited Intervention and Protective Order." In that motion, Aetna noted that it had learned, upon the unsealing of the case, that Relator had provided her counsel in this *qui tam* action with records and information belonging to Aetna.

4. Those records and information, according to Aetna, included "highly sensitive materials that are attorney-client privileged and attorney work product of Aetna's in-house and outside lawyers, as well as confidential and proprietary business records and information." (Aetna Mot. 5, Doc. No. 32.) Aetna's motion, which was itself filed under seal and served only on Relator (not Defendants or the Government), requested leave to file another motion under seal, which would request intervention in this action for the limited purpose of seeking the return of its privileged or otherwise confidential records and information.[1]

5. On June 4, 2018, following an on-the-record telephone conference, I denied without prejudice Aetna's motion. I noted that Aetna could publicly file a motion for limited intervention and a protective order, and that, if necessary, Aetna could be directed to provide information or documents in support of its motion for review *in camera*.

6. Thereafter, Aetna filed the motion under consideration, which they styled "Motion for Protective Order Requiring the Return of Privileged and Proprietary Documents and Information, and Redaction of Portions of the Complaint Containing Information Taken from These Documents." In this motion, Aetna reiterates that Relator provided her counsel with documents and information belonging to Aetna that are subject to

---

[1] Because this previously-denied motion contains no information for which there is good cause to seal, I will unseal this motion.

attorney-client privilege or work-product protection, or are otherwise "confidential" or "proprietary."

7. Aetna currently requests that I order Relator and her counsel—pursuant to my "inherent equitable power . . . to prevent abuses, oppression, and injustice"—to "(1) return . . . all of Aetna's records that are attorney-client privileged, attorney work product, [or] confidential and proprietary business information, and destroy all copies of such records . . . ;" (2) "state and certify under penalty of perjury that they" have done so and provide a certified "accounting identifying each person to whom [Relator] or her counsel has provided Aetna's records and information;" (3) "refrain from any use of such records or information;" and (4) "redact certain paragraphs of the Complaint containing direct references to Aetna's privileged and confidential records and information." (Aetna's Mem. in Supp. 2.)

8. As to Aetna's claims of attorney-client privilege and work-product protection, Relator responds that Aetna has not proffered any details about the documents that would allow her (and me) to evaluate Aetna's claims. Relator's counsel advises that they have provided Aetna with a list that identifies each document that Relator provided them, including those documents that Relator's counsel "never reviewed" and did not retain. (Pl.'s Opp'n 6.)

9. As to the remaining documents, Relator contends that "forc[ing] [her] and her counsel not to use any documents and 'information' that was obtained from Aetna would nullify the entire *qui tam* process and deprive the government of its primary weapon for fighting corporate fraud against the government." (Pl.'s Opp'n 8.) In support of this argument, Relator cites cases in which courts have concluded that the public

3

interest in protecting whistleblowers embodied in the False Claims Act may preclude claims against a relator for misappropriating an employer's confidential information or breaching a confidentiality agreement. Relator further argues that Aetna has not identified a basis for the relief it seeks—such as an employment agreement that prohibited her conduct.

10. For the reasons set out below, I will grant Aetna's motion to the extent it seeks limited intervention in this matter. However, as to the protective order Aetna seeks, I will deny the motion without prejudice.

## DISCUSSION

11. As an initial matter, I note that Aetna is not currently a party to this action. While Aetna indicated in its previous motion that it would seek to intervene in this action for the limited purpose of seeking the return of its documents, the instant motion does not discuss intervention. Because, however, Relator does not oppose Aetna intervening for the limited purpose of seeking a protective order, Aetna will be permitted to intervene for this limited purpose. See Fed. R. Civ. P. 24(a)(2) (requiring a court to permit a non-party to intervene where the party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of this action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest"); Mun. Revenue Servs., Inc. v. Xspand, Inc., No. 05-cv-0671, 2006 WL 2816602, at *3 (M.D. Pa. Sept. 28, 2006) (granting non-party's motion to intervene under Rule 24(a)(2) in order to assert attorney-client privilege over documents sought from a party in discovery).

12. Turning to the merits of the protective order sought by Aetna, I first note that "[t]he use of information obtained by a party independent of the discovery process is not regulated by the [Federal Rules of Civil Procedure]." Spencer v. Pottstown Sch. Dist., 292 F. Supp. 3d 635, 642 (E.D. Pa. 2018) (internal quotation marks omitted). However, a court has an inherent equitable power to "sanction a party that seeks to use in litigation evidence that was wrongfully obtained." Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 325 (S.D.N.Y. 1997).

13. This inherent authority applies both to disclosures in violation of the attorney-client privilege or work product protection, and disclosures in violation of some other requirement of confidentiality, such as a confidentiality agreement. However, the analysis varies for these different bases for confidentiality, particularly in the context of an action under the False Claims Act. Accordingly, I will address these issues separately below.

Attorney-Client Privilege and Work-Product Protection

14. Courts have, in certain circumstances, invoked their inherent authority to sanction a relator's counsel for using attorney-client privileged documents provided to them by a relator. See, e.g., United States ex rel. Frazier v. IASIS Healthcare Corp., No. 05-cv-766, 2012 WL 130332, at *13–17 (D. Ariz. Jan. 10, 2012); United States ex rel. Hartpence v. Kinetic Concepts, Inc., Nos. 08-cv-1185 & 08-cv-6403, 2013 WL 2278122, at *2–4 (C.D. Cal. May 20, 2013). In both Frazier and Hartpence, the relators had provided their counsel with privileged documents taken from their employer in order to support a *qui tam* action under the False Claims Act. And, in both cases, the court determined that sanctions were appropriate because the relator's

5

counsel did not take appropriate steps to protect the employer's privilege. Hartpence, 2013 WL 2278122, at *2 (disqualifying relator's counsel for knowingly transferring the employer's privileged documents to the U.S. Attorney's Office and repeatedly referring to the privileged documents in the pleadings); Frazier, 2012 WL 130332, at *14–15 (ordering relator's counsel to pay attorneys' fees to employer whose privileged documents relator's counsel improperly retained after the *qui tam* action was unsealed).

15. Frazier and Hartpence turned on two facts: (1) that the relator's counsel possessed or used privileged documents belonging to the relator's employer; and (2) that the relator's counsel did so after the unsealing of the case, when it was therefore feasible to return the documents to the employer without breaching the seal required by the False Claims Act. Frazier, 2012 WL 130332, at *15; Hartpence, 2013 WL 2278122, at *2.

16. Here, however, Aetna's motion fails to sufficiently establish the first fact—that the documents are, in fact, privileged. Aetna's motion does not describe, even generally, the types documents it contends are in the Relator's possession and subject to the attorney-client privilege or work-product doctrine, such that I can assess these claims. Cf. Fed. R. Civ. P. 26(b)(5)(A)(ii) (requiring a party asserting a privilege in discovery to "describe the nature of the documents, communications, or tangible things not produced or disclosed [due to privilege]—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim").

17. Aetna does not contend that it cannot provide this information because it is unaware of what specific documents are in Relator's counsel's possession. Indeed, Relator's counsel has submitted a declaration with their Opposition, affirming that they have identified for Aetna every one of Aetna's documents that counsel received from Relator. (Thomas Decl. ¶ 6b.)

18. Instead, Aetna contends that it cannot do so in a public filing without revealing the privileged information. I understand Aetna's preference to litigate this issue under seal, but I still must take into account the public's right of access. See Pansy v. Borough of Stroudsburg, 23 F.3d 772, 780 (3d Cir. 1994) (recognizing that there is a public "right of access to judicial proceedings and judicial records"). As Rule 26 makes clear with respect to claims of privilege made during discovery, there are ways to sufficiently describe the purportedly privileged documents without revealing information that is itself privileged—by, for example, providing "dates, authors, and recipients" of the documents. See SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 475–76 (E.D. Pa. 2005) (describing the creation of a privilege log to allow for the evaluation of a privilege claim).

19. At this juncture, Aetna has not provided any information that would allow me to evaluate its claims of attorney-client privilege and work-product protection. No dates, authors, recipients, or general topics of the documents at issue have been provided. And, as stated above, there are ways to provide this type of information without disclosing legitimately privileged material.

20. Accordingly, Aetna's motion will be denied without prejudice as to its claims seeking the return of documents subject to the attorney-client privilege or work-product

protection. Aetna will be permitted to renew its motion, providing, in a public filing, the general, non-privileged information referenced above for any documents it claims are privileged. After evaluating this renewed motion, and Relator's response to it, I will determine whether *in camera* review of any documents is necessary.

Otherwise "Confidential" or "Proprietary" Documents and Information

21. As to those documents and information that Aetna contends should be returned because they are otherwise "confidential" or "proprietary," Aetna's motion will also be denied without prejudice.

22. Aetna is correct that courts have, in certain egregious circumstances, precluded a party's use of documents where the party improperly obtained those documents outside of the discovery process. See, e.g., Spencer, 292 F. Supp. 3d at 642–45 (precluding a plaintiff in an employment discrimination action from using emails that he had "purloined" from the email account of the employer's human resources director); Fayemi, 174 F.R.D. at 321–322, 327 (similarly precluding a plaintiff in an employment discrimination action from using emails that the plaintiff had obtained by sneaking into his former supervisor's office and printing them from the supervisor's computer).

23. Here, however, Aetna has neither specifically identified those documents that they contend Relator misappropriated, nor alleged any specific circumstances of the misappropriation—such as how Relator obtained access to the documents, whether by means of her regular work-related access to such documents, or by some illicit means[2]—that would demonstrate that the appropriate remedy is to preclude Relator

---

[2] For her part, Relator has submitted a declaration affirming that she "only took documents to which [she] has access in the normal course of [her] work responsibilities." (Behnke Decl. ¶ 6.)

8

from using the documents. Nor has Aetna identified any specific employment agreement that prohibited Relator from disclosing the documents or information at issue.

24. This matter differs from cases such as <u>Spencer</u> and <u>Fayemi</u> in that, here, Relator claims that she provided Aetna's documents to her counsel for the sole purpose of reporting a fraud on the government, an activity protected by the False Claims Act. Courts have reached different conclusions as to whether the public interest in rectifying fraud—a policy embodied in the Act—precludes claims against a relator for misappropriating an employer's confidential documents in violation of a common-law duty or a confidentiality agreement. One commentator has summarized the "three distinct approaches" courts have taken in confronting this issue as follows:

   > The first and largest group of courts holds that public policy voids confidentiality agreements in the context of the [Act]. A second, smaller group takes the opposite approach, holding that confidentiality agreements are enforceable. The Ninth Circuit has adopted a third approach, holding that the admissibility of documents obtained through self-help discovery turns on the reasonableness of the relator's conduct in relation to the need for the documents.

   Stephen M. Payne, <u>Let's Be Reasonable: Controlling Self-Help Discovery in False Claims Act Suits</u>, 81 U. Chi. L. Rev. 1297, 1298–99 (2014).

25. While the United States Court of Appeals for the Third Circuit has not yet confronted the issue, at least two judges in this district have. See <u>Walsh v. Amerisource Bergen Corp.</u>, No. 11-cv-7584, 2014 WL 2738215, at *4–7 (E.D. Pa. June 17, 2014) (J. Surrick); <u>United States ex rel. Notorfrancseco</u>, No. 09-cv-1703, 2014 WL 7008561, at *4–5 (E.D. Pa. Dec. 12, 2014) (C.J. Tucker). Judge Surrick and then-Chief Judge Tucker both approved of the third approach (used by the Ninth Circuit), which asks

whether the relator's removal of documents was limited to those "reasonably necessary to pursue a[] [False Claims Act] claim," and did not involve "a vast and indiscriminate appropriation of [the employer's files]." Walsh, 2014 WL 2738215, at *6 (quoting Cafasso, United States ex rel. v. Gen. Dynamics c4 Sys., Inc., 637 F.3d 1047, 1058, 1062 (9th Cir. 2011)).

26. Here, Relator has declared that she only "took a limited number of documents to demonstrate what [she] had been observing[,] . . . was careful to only take documents that directly related to the fraud [she] was seeking to report, and . . . only took documents to which [she] has access in the normal course of [her] work responsibilities." (Behnke Decl. ¶ 6.) Aetna has not attempted to demonstrate otherwise.

27. Accordingly, as to the purportedly "confidential" or "proprietary" documents, Aetna's motion will be denied without prejudice. Aetna will be permitted to refile its motion, correcting the two deficiencies outlined above and summarized below.

28. Specifically, Aetna's renewed motion must first identify the documents that it contends are "confidential" or "proprietary" as well as any employment agreement or policy prohibiting disclosure. As with the purportedly privileged documents, Aetna shall attempt to provide general, non-confidential information that will allow me to evaluate its claim. After evaluating this renewed motion, and Relator's response to it, I will determine whether *in camera* review of any documents is necessary.

29. Second, Aetna's renewed motion must set out any evidence that the documents at issue were not reasonably necessary to Relator in asserting a claim under the False

Claims Act, or that Relator indiscriminately removed documents, such that the public interest embodied in the False Claims Act does not preclude the relief sought.

**WHEREFORE,** is hereby **ORDERED** that:

- The "Motion for Protective Order" filed by Non-Party Movant Aetna, Inc. (Doc. No. 41) is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART,** as set out above.

- A status conference in this matter is **SCHEDULED** for **Thursday, May 9, 2019, at 10:00 a.m.** in Courtroom 4B.

- A schedule for Aetna to renew its motion for a protective order will be set following the status conference.

- The Clerk of Court shall **UNSEAL** Aetna's previously-denied "Motion for Leave to File Under Seal a Motion for Limited Intervention and Protective Order" (Doc. No. 32).

BY THE COURT:

_____
MITCHELL S. GOLDBERG, J.