IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* SARAH BEHNKE,<br><br>　　　　　　Plaintiff-Relator,<br><br>　　v.<br><br>CVS CAREMARK CORPORATION, *et al.*,<br><br>　　　　　　Defendants. | Civil Action No. 2:14-cv-00824 MSG |

**PARTIES' JOINT REPORT OF RULE 26(f) MEETING**

This Report is submitted pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Local Civil Rule 16.1, and this Court's Policies and Procedures.

Matters agreed upon by the parties are set forth below in standard font. Where the parties disagree, the positions of each party are clearly identified and set forth in italics. To the extent that proposed dates are dependent upon antecedent events, such dates are set forth in brackets, with reference to the antecedent event.

**I.    Rule 26(f)(3)(A): what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made.**

The parties agree to exchange Initial Disclosures on or before September 11, 2020.

**II.   Rule 26(f)(3)(B): the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues.**

One or more of the parties currently intend to take discovery on a number of subjects with respect to Medicare Part D, including, but not limited to: Communications between Defendants

1

and Aetna; Agreements between Defendants and Aetna and the negotiation thereof; Agreements between Defendants and SilverScript; Prescription Drug Event (PDE) data prepared or supplied by Defendants; Direct and Indirect Remuneration (DIR) reports prepared or supplied by Defendants; Amounts paid by Defendants to pharmacies; Agreements between Defendants and pharmacies regarding reimbursement; Reconciliations and/or payments with pharmacies or PDPs associated with contractual provisions; Centers for Medicare & Medicaid Services (CMS) regulations and guidance; Communications, policies, and practices of Defendants and of CMS; Understandings and practices within the relevant industries; losses sustained by the government, if any; affirmative defenses raised by Defendants; FTC order and other investigations regarding drug price reporting in Part D; Caremark's internal analyses of price data or calculations of over- and underpayments to pharmacies; Caremark's use of MACs for Plans and pharmacies; and Caremark's pricing and price reporting conduct under Part D prior to 2010 regulatory price reporting change.  The inclusion of a subject on this list is not intended to convey that the Parties agree that any particular discovery is appropriate or inappropriate.  The parties reserve their rights to seek all discovery permitted under the federal and local rules, and to object to any discovery to the extent permitted under the federal and local rules.

The parties propose the following schedule to govern discovery and certain other pleadings or filings as follows:

| Event | Proposed Deadline |
| --- | --- |
| Parties' Fed. R. Civ. P. 26(a)(1) Initial Fact Disclosures | September 11, 2020 |
| Motion to Amend the Pleadings Other Than to Add or Properly Identify Parties | November 10, 2020 |
| Substantial completion of document production in response to RFPs served on or before September 30, 2020 | March 30, 2021 |

| Amendments to the Pleadings to Add or Properly Identify Parties | April 17, 2021 |
|---|---|
| Close of Fact Discovery | August 13, 2021 |
| Expert Reports | September 24, 2021 |
| Rebuttal Expert Reports | November 5, 2021 |
| Close of Expert Discovery | December 22, 2021 |
| Dispositive Motions | February 11, 2022 |
| Oppositions to Dispositive Motions | April 1, 2022 |
| Replies to Dispositive Motions | April 29, 2022 |

**III.    Rule 26(f)(3)(C): any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced.**

The parties will be seeking the production of electronically stored information ("ESI") in discovery. The parties will meet and confer regarding a plan or formal protocol for electronic discovery, and agree to present their proposed ESI protocol and/or any dispute regarding the ESI protocol to the Court by **September 4, 2020**.

The parties agree that reasonable measures will be taken to preserve potentially discoverable data from alteration or destruction in the ordinary course of business or otherwise.

**IV.    Rule 26(f)(3)(D): any issues about claims of privilege or of protection as trial-preparation materials, including—if the parties agree on a procedure to assert these claims after production—whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502.**

The parties submitted a stipulated protective order in this matter, and the Court entered that stipulated protective order on May 13, 2019. Dkt. No. 74.

**V.    Rule 26(f)(3)(E) & (F): what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).**

*Relator's Position:  The only modification that Relator seeks from the Federal Rules is to the number of permissible depositions.  Relator proposes that each side may take up to 18 depositions without further leave of court. Up to three (3) depositions per side may exceed the 7 hour limit but may not run longer than 12 hours.*

*In light of the many topics that will need to be addressed through discovery (as set forth in para. 1, above), and based on our knowledge to date of the number of employees at Caremark and Aetna who addressed this issue, we anticipate needing 8 - 10 depositions of Caremark personnel and 2-3 Aetna (or former Aetna) personnel. If anything, Caremark's initial disclosures identifying persons with information, as well as more comprehensive document discovery than the limited production to date, will only serve to identify additional people.  From Caremark's previous representations to the government as to how it took Plan prices and passed them through to the pharmacies and that Caremark would not have been able to apply the pharmacy GERs on an individual claim basis, as well as complexities in the contracting and price reporting systems themselves, we will need to depose persons in Caremark's Data Analytics department; personnel who negotiated with the pharmacy networks; one or more data/EIS specialist(s) to explain Caremark's databases and interplays between information on the Part D Plan side and the pharmacy side of Caremark's business; Caremark employees who expressed concerns about the price reporting at issue in this case; persons who participated in the discussions and negotiations that led up to Aetna terminating its Med D pharmacy network contracting relationship with Caremark; Caremark's ability to assist Aetna after that partial termination in calculating price reporting to CMS; Caremark's communications with CMS about the price reporting issues in this case; and higher-level Caremark personnel to trace knowledge of the*

*allegedly fraudulent price reporting. Additionally, we will need to depose one or more persons regarding discovery obtained to nail down damages.*

*From prior experience, we are aware that certain persons will likely be able to provide testimony on several of these topics and might require longer than the standard 7 hours for questioning. For example, it is likely that some of the data-centered depositions will be complicated and will require additional time.*

*On the Aetna side, we are aware that at least four persons had intensive involvement in evaluating Caremark's allegedly fraudulent conduct, how to respond to that conduct, an effort to procure additional attestations from Caremark regarding the accuracy and completeness of the price information reported by Caremark to Aetna, communications with Caremark about the issues, how to report prices following the partial termination of Caremark, and calculating the monetary impact of Caremark's fraudulent price reporting.*

*Additionally, we anticipate a number of additional non-party depositions, including pharmacy chains or GPOs and possibly the Pharmaceutical Care Management Association and Milliman.*

***Defendants' Position:** Defendants disagree that a departure from the Federal or Local Rules regarding discovery is warranted, or that Relator has identified good cause for any such departure. In particular, Relator has failed to justify modifying the rules to extend the duration of any depositions. To the extent Relator believes there is good cause to extend particular depositions beyond the seven-hour limit imposed by the Federal Rules, Relator should be required to identify the specific depositions for which it believes seven hours will be inadequate, and provide specific reasons why seven hours would be insufficient to conduct those depositions.*

## VI. Additional Subjects

### 1. Jurisdiction

There is no dispute about this Court's jurisdiction.

### 2. Discovery Conducted by the Parties to Date

The Parties have conducted the following discovery to date:

    a) **<u>Discovery directed to Defendants:</u>** Pursuant to a Stipulation between the Parties, Defendants produced to Relator in May 2019 the documents that Defendants had previously provided to the Government during the course of the Government's investigation related to this matter. Further discovery directed to Defendants was prohibited pursuant to the Stipulation until the Court sustained some or all claims following Caremark's motion to dismiss. On May 21, 2020, due to the merger of Caremark and Aetna, Relator served on Defendants Relator's First Requests for the Production of Documents containing the same requests as Relator had included in its August 2018 subpoena to Aetna. The Caremark Defendants served their objections to those requests on June 22, 2020.

> *<u>Relator's further position</u>: Relator states that among other objections, Caremark objected that it is not in a position to produce documents from Aetna and should not have to do so in any event.*
>
> *<u>Defendants' further position</u>: Defendants state that Relator's characterization of Caremark's objections is incomplete and misleading; Defendants' written objections speak for themselves, and incomplete party characterizations thereof are neither necessary nor helpful for purposes of Rule 16 or Rule 26(f).*

b) **Discovery directed to Third Parties:**  The chart below lists each entity on which Relator served a subpoena *duces tecum*, the date of the subpoena and whether the third party entity served any responses or objections or produced any documents in response.

| Entity | Date of Subpoena | Responses/ Objections (Y or N) | Documents Produced (Y or N) |
|---|---|---|---|
| **Advanced Pharmacy Concepts, Inc**. (JKL Associates, Inc. F/K/A Advanced Pharmacy Concepts, Inc.) | 8/30/2018 | Y | N |
| Advantage Pharmacy Concepts, Inc. c/o **Price Waterhouse LLP** | 9/17/2018 | Y | N |
| **Aetna, Inc**. | 8/30/2018 | Y | N |
| **Anthem Insurance Companies, Inc.** | 9/17/2018 | Y | N |
| **Costco Wholesale Corporation** | 9/5/2018 | Y | N |
| **Pharmaceutical Care Management Association** | 8/30/2018 | Y | Y (6/21/2019) |
| **Walgreen Co** | 9/5/2018 | Y | N |
| **WellCare Health Plans, Inc.** | 9/17/2018 | Y | N |

3. **Issues Regarding Impact of Caremark-Aetna Merger on Assertions of Privilege**

*Relator's Position:  Defendant CVS Caremark has now merged with non-party Aetna, which had substantial documents and information pertinent to this action.  Given the separate corporate existence and seemingly adverse relationship of Aetna and Caremark prior to the merger as to issues central to this litigation, the Caremark defendants shall not be permitted to assert attorney/client privilege, work product protection or any other such privilege as to either*

7

*Caremark or Aetna documents shared between the two entities prior to the merger, to the extent such privilege did not exist at the time the requested documents were created or shared between the two entities. In other words, the Caremark defendants shall not be permitted to claim that documents are privileged and/or work product by virtue of the current corporate relationship between Aetna and Caremark when that privilege or protection did not exist at the time the documents were created or shared between Aetna and Caremark prior to the merger.*

*__Defendants' Position__: Defendants have made no such assertion of privilege, nor have Defendants communicated any intention to do so. This "issue" is therefore not an issue at all; it is, at best, a premature argument by Relator regarding a purely hypothetical concern entirely of Relator's own making. If, in the future, the Defendants make an assertion of privilege that Relator contends is improper, the parties will meet and confer, and if the parties cannot reach agreement Relator may seek judicial relief. The Court would then have before it what is not before it now: A specific assertion of privilege and a concrete set of facts on which to judge that assertion. Relator has provided no reason why this standard process for identifying and resolving privilege disputes is inappropriate or insufficient for purposes of this case. To the extent Relator seeks by way of this Rule 26(f) report or via the Rule 16 conference to obtain an advance ruling regarding what hypothetical assertions of privilege Caremark is "permitted" to make, Relator's request is improper as a procedural matter because it satisfies none of the requirements of Rules 7(b)(1) and 37(a) of the Federal Rules of Civil Procedure or Local Rules 7.1 and 26.1, and is improper as a matter of substance because it is entirely unsupported and speculative.*

4. **Settlement/mediation**

*__Relator's Position__: Relator's counsel has previously broached the concept of settlement discussions and proposed possible mediation with a reputable, proven mediator of defendants' choosing. Defense counsel has declined these overtures. Relator continues to believe that this*

*case might benefit from early resolution efforts and we are willing to work with United States Magistrate David Strawbridge or through another agreed-upon mediation structure.*

***Defendants' Position****: Defendants are willing to participate in good faith in any Alternative Dispute Resolution process the Court may order. However, Defendants disagree with Relator that early resolution efforts are likely to be productive. Given the nature of the case and the parties' respective positions, Defendants believe that if mediation is to be productive, it would likely be only after the case is further developed.*

| | |
|---|---|
| BERGER MONTAGUE PC | WILLIAMS & CONNOLLY LLP |
| /s Susan Schneider Thomas | /s Holly M. Conley |
| Susan Schneider Thomas (PA 32799) | Enu Mainigi (*pro hac vice*) |
| Joy P. Clairmont (PA 82775) | Craig D. Singer (PA 71394) |
| 1818 Market St, Suite 3600 | Holley M. Conley (*pro hac vice*) |
| Philadelphia, PA 19103 | Daniel M.. Dockery (*pro hac vice*) |
| Telephone: (215)875-5711 | 725 Twelfth Street, N.W. |
| Email: sthomas@bm.net | Washington, DC 20005 |
| | Telephone: (202) 434-5000 |
| *Counsel for Relator* | Facsimile: (202) 434-5029 |
| | *Counsel for Defendants* |

Dated: August 26, 2020

9