# EXHIBIT A

LAW OFFICES

## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

DANIEL M. DOCKERY
(202) 434-5698
ddockery@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

November 15, 2020

Via Email

Natalie Finkelman Bennett
Shepherd, Finkelman, Miller & Shah, LLP
1845 Walnut Street
Suite 806
Philadelphia, PA  19013

Re:     **United States ex rel. Behnke v. Caremark Corp. et al., Civ. A. No. 2:14-cv-00824 (MSG)**

Dear Natalie:

We write on behalf of Defendants (collectively, "Caremark") in regard to our recent correspondence and meet-and-confer discussions regarding Relator's Second Request for Production of Documents.

## I.     General Topics

Your October 21, 2020 letter identified a number of overarching, "big picture" topics that we have discussed during the meet-and-confer process.  We believe many of the issues identified in that letter have since been discussed in response to specific Requests and are better addressed in that context.  To the extent those big picture questions have not been addressed in connection with specific Requests, we address them below.

### A.     Time Period

As we have previously stated, Caremark's position is that the appropriate time period for discovery in this case (as a general matter) is January 1, 2011 to January 1, 2015.  We have also expressed that Caremark is willing to consider specific adjustments to that time period in the context of specific Requests.

You initially rejected a general cut-off of discovery in 2015 and instead argued that discovery as a general matter "should continue through the present."  Oct. 21, 2020 letter § 11.  During our meet and confer on November 5, 2020, however, you indicated that Relator is

WILLIAMS & CONNOLLY LLP

November 15, 2020
Page 2

amenable to a 2015 general cut-off for discovery relating to Caremark's relationship with Aetna. Accordingly, we understand there to be no remaining dispute regarding the general cut-off for discovery except as to discovery regarding Caremark's relationship with SilverScript.

In your letter dated November 6, 2020, you proposed a general cut-off date of December 31, 2018 for "discovery relating to Caremark's operations and conduct through SilverScript." That remains too broad a time period. Relator's own allegations and statements make clear that Relator has not and cannot allege any false claims relating to Caremark's relationships with Aetna after January 1, 2015. The Caremark-Aetna relationship is of course the focus of nearly all of the specific allegations in the complaint, given that Aetna was Relator's employer. The Caremark-SilverScript relationship, by contrast, is the subject of far fewer allegations, nearly all of which are based on "information and belief." But as with the Caremark-Aetna relationship, the complaint contains no specific allegations regarding any conduct by Caremark in connection with SilverScript occurring after 2015.

Relator's position therefore flouts the rule that "discovery in qui tam actions must be limited and tailored to the specificity of the complaint." *United States ex rel. Bane v. Breathe Easy Pulmonary Servs.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549, at *1 (M.D. Fla. Aug. 27, 2008). To the extent Relator seeks discovery regarding SilverScript or any other plan after 2015, she does so based on speculation. This is not the basis for burdensome discovery. And as to the particular question of the time period of discovery in qui tam actions, "superficial" allegations of misconduct—that is, claims that Medicare Part D "have been caused and continue" to pay out fraudulent claims—are the type of "cursory allegations, made on information and belief along, [that] are unquestionably insufficient to open the door to broad and burdensome discovery" into practices for years after the specific allegations of the complaint. *United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, 2013 WL 4525226, at *2 (E.D. Pa. Aug. 27, 2013).

Nonetheless, in the spirit of good-faith compromise and reserving all objections, Caremark proposes that the general time period with respect to discovery be January 1, 2010 to December 31, 2016, recognizing that the parties may take different positions or reach different agreements as to specific Requests.

**B.     Sources for Document Collection**

As we have discussed, we expect that most of the material responsive to the Requests will be obtainable by searching the e-mail of agreed custodians, including attachments. We are also working with our client to identify sources other than e-mail that are likely to contain responsive material, including but not limited to potential document repositories, shared drives, and hard copy documents that you have inquired about in the context of specific Requests. This process includes interviewing agreed custodians regarding their practices with respect to documents.

WILLIAMS & CONNOLLY LLP

November 15, 2020
Page 3

As part of that process, we discuss with custodians whether they would have used their cell phones or other mobile devices to send or receive text messages regarding subjects responsive to your Requests. Thus far, we have no information that would lead us to expect that any of the custodians did so. Contrary to your assertion in your October 16, 2020 letter, nothing in the federal rules categorically mandates that cell phones (or any other category of devices or documents) must always be comprehensively searched for responsive documents. To be clear, we are not ruling out the possibility of doing so if information comes to light that would justify the burden, but to date we are unaware of any.

C.    **Privilege Issues**

As we have previously indicated, we do not yet know whether common interest or joint defense privileges are applicable to any documents in this case. We are agreed that if we withhold any documents based on these privileges, we will log each document on a privilege log. You requested that we advise whether Caremark intends to assert an advice of counsel defense, and we informed you that at present Caremark does not intend to do so, and that we will advise by December 30, 2020 if that changes. We cannot agree to your request that Caremark commit to doing so sooner.

D.    **Part D drug price reporting requirements ("PDE and DIR delimiters)**

The proposed modification you offered in your November 6, 2020 letter regarding the "PDE and DIR delimiters" that we have discussed during the meet and confer process is generally acceptable, with one caveat; we do not agree to the inclusion of "or CAPS," because it is redundant, given Relator's position that "pharmacy discount rates" includes CAPS, and "pharmacy discount rates" has been a separate subject of discussion by the parties.

Accordingly, we agree that the following modified phrase:

documents unrelated to Part D drug price reporting requirements through PDE or DIR . . . concerning negotiated prices, actual cost, administrative costs, actually paid, pharmacy discount guarantees; pharmacy or Plan reconciliations, and issues raised by Aetna during the Aetna-Caremark Price Dispute.

will be deemed to replace occurrences of the unmodified phrase below in Defendants' Objections and Responses to Relator's Second Request for Production of Documents:

documents unrelated to whether PDE and/or DIR reports supplied by Caremark to Aetna were consistent with statutory and/or regulatory requirements regarding "actual cost" and/or "negotiated price."

Our understanding is that this resolves the dispute regarding the inclusion of the foregoing unmodified phrase in Defendants' objections.

WILLIAMS & CONNOLLY LLP

November 15, 2020
Page 4

### E.   Custodians and Search Terms

On October 30, 2020, we agreed to Relator's request to add Neil Lund, John Lavin, and Domenico Gugliuzza as additional custodians.  On November 6, 2020 you agreed to remove Mitch Betses, Lisa Lindsey, and Matthew Leonard from the list of custodians requested by Relator.  We indicated that we were still evaluating whether to agree to the additional custodians requested by Relator, and can confirm that Caremark is willing to add Lara Church, Christine Ciotinga, Richard Ponesse, and Susan Salcido to the current list of custodians.  We are continuing to evaluate the remaining custodians requested by Relator.

On October 23, 2020, we also sent you a list of proposed search terms.  On November 11, 2020, you provided us your counter-proposed list, which we are evaluating.

## II.   Individual Requests from Relator's Second Request for Production of Documents

We have provided responses to individual Requests to the extent we understand there to be an open dispute not addressed by our discussion of the general topics above.  Our individual responses, or lack thereof, do not constitute a withdrawal of any of our previous objections, particularly where our continuing investigation reveals a substantial burden in collecting and reviewing documents for particular Requests.  Rather, we provide responses in the hopes of clarifying our position and moving closer toward agreement.

### Request No. 2

In your letter dated October 28, 2020, you request that Defendants produce "a recording of the February 2013 call" referenced in Request No. 2.  We requested you provide us what basis you have for believing that any such recording exists; you have provided none.  Based on our investigation to date, Defendants possess no such recording and have no reason to believe that any such recording ever existed.

### Request No. 3

To the extent we reach agreement on search parameters for other Requests, we anticipate that estimates of potential liability circulated by or to key custodians will likely be captured by a collection and review of custodial emails after the application of agreed search terms.  Defendants will produce any non-privileged documents that are located in that fashion, and will log any such privileged documents.  Defendants will not otherwise perform any search for documents exclusively in response to this Request.  The Request remains overbroad to the extent it seeks documents related to Part D plans not at issue in this case, and remains disproportionate to the needs of the case because any search for responsive documents above and beyond an agreed search of custodial e-mail is unlikely to return non-privileged documents.

WILLIAMS & CONNOLLY LLP

November 15, 2020
Page 5

### Request No. 4

This Request seeks documents concerning "potential liability of SilverScript." SilverScript is no longer a defendant in this case, pursuant to the Court's ruling on Defendants' motion to dismiss. Evaluations of SilverScript's liability are therefore irrelevant, and Caremark stands on the objections regarding this Request. We note this Request does not call for "potential liability of Caremark." Documents concerning any potential liability as to Caremark are the subject of Request No. 3, addressed above.

### Request No. 6

We understand there to be agreement that documents responsive to this Request may be responsive to Request No. 1, depending on the search terms agreed to by the parties for Request No. 1, and that the parties will table any dispute as to this Request while negotiating search parameters for Request No. 1.

### Request No. 7

The wording of this Request calls for a different set of documents than those you have described over the course of our meet-and-confer discussions. In line with our discussions, we will not produce submissions prepared by SilverScript. Such documents are irrelevant to this case, as SilverScript is a distinct entity from Caremark and is no longer a defendant. You have noted that the Request can be read to call for documents prepared by Caremark in relation to SilverScript, and Caremark is giving consideration to your position.

### Request No. 9

In your letter dated October 28, 2020, you proposed to limit the Request and to discuss the individuals whose records should be produced. Reserving all objections, Caremark is willing to further discuss this Request.

### Request No. 10

Your request for all minutes, notes of meetings, and distributed materials in connection with five categories of meetings is overbroad on its face to the extent it seeks material unrelated to the subject matter of this case. To the extent such material is related to the subject matter of this case, we anticipate that it will likely be captured by a collection and review of custodial emails after the application of search terms, and we believe that approach is sufficient. However, reserving all objections, we are also working with our client to determine whether a centralized source of files other than e-mail exists for responsive material.

WILLIAMS & CONNOLLY LLP

November 15, 2020
Page 6

**Request No. 11**

With respect to the meaning of "pharmacy MAC," we continue to assert our objection that the phrase is vague and ambiguous. But in light of the attempts you have made to clarify the phrase, we do not believe Caremark's objection will limit the documents we have agreed to produce. You have clarified that by "other prices" you mean prices that "functioned in the same fashion as a MAC"; we are not aware of prices other than MAC that functions in the same way as a MAC, and you have not identified any "other prices" that you contend meet that definition. Likewise, we've explained that we are not aware of any distinct "pharmacy MAC" that would be excluded from the scope of our response, and again you have not identified any to us. With respect to documents regarding Part D plans other than Aetna and SilverScript, we disagree with your contention that such material is relevant to any party's claim or defense or that discovery of such material would be proportional to the needs of the case. As we have discussed with you, we are willing to produce Caremark documents relating to SilverScript, including in response to this Request, to the extent doing so remains proportionate to the needs of the case. To that end, we have offered to include search terms that would capture documents responsive to this Request to the extent such document reference SilverScript.

**Request No. 12**

To follow up on the potential resolution we discussed during our October 27th meet and confer, we confirm that Caremark is willing to search for responsive documents as part of the collection of documents with respect to the custodians to the extent the parties reach agreement on appropriate search terms.

**Request No. 13**

As with Request No. 12, Caremark is willing to search for responsive documents as part of the collection of documents with respect to the custodians to the extent the parties reach agreement on appropriate search terms.

**Request No. 16**

We are in receipt of the letter you sent on November 6, 2020 and are evaluating your proposal.

**Requests No. 17-21**

Caremark will not produce documents exclusively in response to Requests Nos. 17-21. These Requests do not seek documents relevant to this case, and fall well outside the boundaries of what is "limited and tailored to the specificity of the complaint." *United States ex rel. Bane v. Breathe Easy Pulmonary Servs.*, No. 8:06-CV-40-T-24MAP, 2008 WL 4057549, at *1 (M.D. Fla. Aug. 27, 2008). Relator's effort to turn discovery into a fishing expedition

WILLIAMS & CONNOLLY LLP

November 15, 2020
Page 7

regarding events as to plans that are not even mentioned in the Complaint (let alone the subject of Relator's FCA claims) is plainly disproportional to the needs of the case.

**Request No. 28**

Defendants have agreed to produce final reconciliations between Defendants and any pharmacy pursuant to any GER guarantee in the applicable contract between the pharmacy and Defendants.  We anticipate that versions or drafts may exist in e-mails and will produce those to the extent they are captured by agreed search terms and custodians.  We are also willing to produce draft reconciliations to the extent they exist in a centralized location, but will not otherwise conduct an independent search for versions, drafts, or other documents identified in your October 28 letter.

**Request No. 29**

Defendants have agreed to produce final reconciliations between Defendants and Aetna pursuant to the Retail Discount Guarantee.  Defendants also will agree to produce final reconciliations between Defendants and SilverScript pursuant to the Generic Effective Rate Guarantee.  We are also willing to produce draft reconciliations to the extent they exist in a centralized location, but will not otherwise conduct an independent search for versions, drafts, or other documents identified in your October 28 letter.

Caremark stands on its objections to the extent this Request seeks documents as to clients other than Aetna or SilverScript, including unspecified "watch list" clients.  Although you had agreed in your October 28 letter to "specifically identify to [us] the plans that [you] were referring to as being 'watch list' plans per Caremark's designation," you have not done so; instead, your November 1 letter directed our attention to a document previously produced by CVS that simply references the term "watch list" generally (but does not identify "watch list" clients).

**Request No. 30**

We have agreed to produce executed contracts and/or network agreements between Defendants and any pharmacy that incorporate GER guarantee provisions.  In light of your October 28 letter, we do not believe there is any substantive disagreement left to resolve.  We understand your use of the terms "CAPs" and "global rates" in this Request not to refer to anything substantively different from GER guarantees, and your letter of October 28 indicated you have the same understanding.  To be clear, we are not agreeing that references by Caremark employees to "caps" or "global rates" usually refer to GER guarantees (let alone always do).  To the contrary, because the terms "caps" or "global rates" are generic, it is possible they could be used in many unrelated contexts.  However, to the extent pharmacy contracts or network agreements include what are in substance GER guarantee provisions, we will produce them regardless of the precise terminology used in the contract provision.

WILLIAMS & CONNOLLY LLP

November 15, 2020
Page 8

**Request No. 31**

As we have previously discussed, "industry, scholar or conference materials" such as those identified in Request 31 should generally be publicly available, and you have not identified any particular reason to think that all materials responsive to Request 31 would not otherwise be public. We are working with our client to determine whether documents of that type are stored in a centralized location, but based on our investigations to date we are unaware of any. Otherwise, we believe documents responsive to this Request will be collected and review through the use of the general search terms agreed upon by the parties. We do not intend to create search parameters and review documents exclusively for this Request.

**Request No. 32**

This case does not concern SEC filings, and you have provided no reason to believe SEC filings would be relevant. You have not contested that SEC filings are publicly available. If you identify a particular disclosure in a public filing that you contend is relevant, we will consider a request by you to produce non-privileged drafts of that disclosure.

**Request No. 33**

As we have previously discussed, Defendants did not maintain centralized, formal organizational charts for the departments involved in the conduct in this litigation. If we are able to identify organizational charts either through custodial interviews or our review of documents generally, we will produce such charts. Otherwise, we will not search for documents exclusively in response to this Request.

**Request No. 34**

We have reiterated our view that Defendants will not produce documents exclusively in response to this Request. As noted in our discussions, the review and production of document-production policies is typically appropriate only when there is a particularized need and adequate basis for such discovery. Our view on this Request has not changed, particularly given that you have not yet articulated any specific need for specific policies.

Sincerely,

/s Daniel M. Dockery

cc:    Susan Thomas
       Heidi Wendel
       Holly M. Conley