

SUSAN SCHNEIDER THOMAS / *OF COUNSEL*
d 215.875.5711 | sthomas@bm.net

July 1, 2021

**VIA ECF**
The Honorable Mitchell S. Goldberg
United States District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

> Re:   *UNITED STATES OF AMERICA, ex rel. SARAH BEHNKE vs.*
> *CVS CAREMARK CORPORATION, et al., CA No. 14-cv-00824*

Dear Judge Goldberg:

Plaintiff-Relator writes to request a conference to discuss the results of the compromise production and additional issues that need to be resolved. Specifically, we would appreciate the Court's guidance on how to present the following outstanding issues:

1. **Privilege Waiver**: Despite Defendants telling Relator in December 2020 and confirming to the Court (ECF 134) that they were *not* relying on advice of counsel, *Aetna* announced a carefully-crafted "partial waiver" of attorney-client privilege on June 2, 2021. On June 24, they produced almost 100,000 pages of documents that had previously been withheld or redacted. An Aetna privilege log with over 3500 entries was just produced on June 18th. Based on the waiver of privilege, Relator has served subpoenas on two law firms that advised Aetna and Caremark and expect to need depositions. The scope and implications of Aetna's waiver is likely to lead to disputes that will need judicial rulings.

2. **Deposition Limit:** Based on those likely attorney depositions, the number of Caremark and Aetna witnesses who have critical documents to explain and the overall complexity of the issues, Relator will need depositions in excess of the default of ten allowed by the Federal Rules.

3. **Documents and Data:** Caremark has still not provided:

   a. Responsive documents related to CVS Pharmacy and Caremark's use of CVS reimbursement claims to perpetrate its scheme;

   b. Privilege log from Caremark (recently promised by July 9);

   c. Communications by Defendants to and from CMS regarding the conduct at issue;

The Honorable Mitchell S. Goldberg
Page 2 of 3
July 1, 2021



    d.  Communications prior to 2010 regarding price reporting requirements, based on requirements having been proposed in 2008 and adopted in 2009;

    e.  Commercial data from which Relator can ascertain the scope of the scheme of offsetting overpayments to pharmacies on Med D claims with underpayments to pharmacies on commercial (non-Med D) claims, often leading to undisclosed reconciliations between Caremark and the pharmacies;

    f.  Confirmation as to whether all of the relevant contracts have been produced in their entirety, which is hindering a production of documents from at least one third party (Walgreens), which is basing its refusal to produce the contracts on information received by Caremark as to the completeness of its production; and

    g.  Documents linked to spreadsheets that are necessary to make the spreadsheets complete. Because the only search Caremark did was of identified custodians' emails, if there was a complete, functional spreadsheet in a non-custodial email repository that was responsive, that copy of the spreadsheet was not produced. The functional spreadsheets are critical to Relator and her experts.

       In addition, with respect to the sufficiency of the compromise production, Plaintiff-Relator and Defendants have differing views.  Relator's goal has been to explain Relator's concern that the contents of the Industry Analytics share file are not sufficiently responsive to the types of discovery necessary and responsive to Relator's discovery requests, while  Defendants primarily defend their production by touting its size, the fact that there are many documents that address commercial claims and CVS pharmacy, and the fact that they likely did an acceptable job at producing what was actually in that share file.[1]  But Defendants fail to address whether the

---

[1] *See* Defendants' June 29, 2021 Letter to the Court ("Letter") at 2 ("Caremark agreed ***not*** to withhold documents from production that were otherwise responsive simply because they contain references to pharmacies (such as CVS Pharmacy) other than Rite-Aid or Walgreens"); at 3 ("To whatever extent data regarding "price adjustments and financial transactions" existed in the IA Share Drive folders for CVS, Walgreens, and Rite-Aid, it has been produced"). That said, Defendants take a disappointing and disingenuous approach regarding the additional 2 terabytes of data that has not yet been produced.  First, Defendants' counsel told Relator's counsel during a discussion about the compromise production that those files were "largely duplicative of back-up files already being produced" and "more rudimentary, and incomplete" such that it was "not likely that [Relator] would need them.*"* Now they appear to be insinuating that some of Relator's concerns might have been addressed through that same data that was described as duplicative and incomplete. *See* Letter at n. 1 (commenting on Relator's decision to not request the additional data); id. at 3 ("To the extent the IA Share Drive production might have included claim-level data at all, it would have been in the large data files which Caremark offered and Relator declined.")

The Honorable Mitchell S. Goldberg
Page 3 of 3
July 1, 2021



needed discovery ever resided in that share file in the first place, let alone whether that was the sole or likeliest repository for responsive discovery – precisely Relator's concern from the time that production was proposed.  Simply stated, that "compromise" production did not address many of the outstanding discovery issues, yet it is being presented by Defendants as a comprehensive solution.[2]

At this point, given the morass of objections that Defendants proposed to "compromise" through the IA production; the additional outstanding issues; and Relator's inability to commence even Rule 30(b)(6) depositions before completing document discovery, Relator respectfully requests a conference so that the Court can provide guidance to the parties on how it prefers to deal with the outstanding issues, including the possible filing of a comprehensive motion to compel by Relator.   Although we very much appreciate the Court's efforts to date to resolve the discovery issues, Relator believes that it is necessary that the parties submit appropriate briefs and exhibits to reflect the requested discovery; to focus on the objections made by Defendants; and to provide documents and argument that allow Relator to meet whatever burden the Court requires for Relator to justify certain discovery.  Defendants should not be allowed to shirk dealing with critically important discovery issues under the guise of their "compromise" production.

Thank you very much for your assistance.

Respectfully submitted,

Susan Schneider Thomas

---

[2] Defendants' description when they offered the compromise production was that it should "resolve any outstanding concern regarding Caremark's production of material relating to CVS Pharmacy, Walgreens, and Rite-Aid."  Email from Daniel Dockery to Susan Schneider Thomas et al., April 21, 2021.