**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* SARAH BEHNKE<br><br>　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CVS CAREMARK CORPORATION, CAREMARK Rx, LLC (f/k/a CAREMARK Rx, INC.), CAREMARKPCS HEALTH LLC, and CAREMARK PART D SERVICES, LLC,<br><br>　　　　　　　　　Defendants. | **Civil Action No. 2:14-cv-00824 (MSG)** |

**PLAINTIFF-RELATOR'S BRIEF PURSUANT TO
COURT ORDER DATED JULY 28, 2021, AS AMENDED (ECF 173)\***

## I. INTRODUCTION

Since the July 28 hearing, the parties have met and conferred about the Missing Documents chart (ECF 171, Ex. 1) and other discovery issues. As noted in our letter to the Court dated August 23, 2021, we sent Defendants a detailed letter with specific questions concerning the Missing Documents chart and received a detailed response. The parties also conferred about search terms for various requests and have recently exchanged detailed correspondence about that. Finally, based on information from Defendants regarding Defendants' Industry Analytics ("IA" or "compromise") production, Relator has made progress in evaluating the sufficiency of the IA production.

The discovery disputes have narrowed, but there are several issues stemming from the Missing Documents chart that we bring to the Court for resolution. With regard to search terms for various requests, the parties will continue to talk, but there is still a significant gap regarding the searches that each side believes are necessary or appropriate. With respect to Defendants' IA production, we identify some examples of how that production was incomplete, but we cannot reach a final conclusion until we understand specifically which document requests Defendants claim the IA production is intended to satisfy. Pursuant to the Court's July 28 Order (ECF 171), Defendants must identify specific RFPs to which the IA file is allegedly responsive in their responsive brief.

Separately, we wish to underscore that there are other discovery disputes that have not yet been resolved and have not yet been the subject of full briefing or hearings. The recent briefing and hearings have focused primarily on the IA or "compromise" production. Additional issues have been raised in prior Status Reports and letter submissions, e.g., ECF # 128 (Status Report noting failure to identify non-custodial share drives); ECF #141 (Status Report specifically identifying non-custodial repositories that appear to contain responsive documents); April 23, 2021 Letter to Court (noting need for internal Caremark documents from 2008-09 discussing impending regulatory change); July 1, 2021 Letter to Court (noting issue re number of depositions; documents internally linked to spreadsheets that were produced; documents from 2008-09 time period).[1] Relator will meet and confer with Defendants about any additional issues and report back to the Court as needed.

## II. UNRESOLVED ISSUES FROM JULY 28 HEARING

### A. Missing Documents from Chart Itemizing Production of Data

For ease of reference, attached as Ex. A is Defendants' response to the Missing Documents chart, with row numbers added. We address four main issues. *First*, as to various documents listed on the Missing Documents chart, Defendants have refused to identify which (if any) of multiple versions of similarly-named or nearly identical documents are the *final* versions. *Second*, Defendants refuse to produce various documents that they deem to be Aetna or SilverScript documents, although case law generally provides that a parent corporation can be required to produce documents of a wholly-owned subsidiary. *Third*, Defendants have not provided full information about CVS Pharmacy reconciliation "look-alikes", (Ex. A, Row 16). And *fourth*, Defendants refuse to produce what has been referred to as CVS Financial information (Ex. A, Row 19).

**1. Final versions**. Our inability to identify which versions of certain spreadsheets or submissions to CMS (the federal agency that runs Medicare) are actually final accounted for various

---

[1] Specifically, Relator believes that Defendants' methodology of primarily searching only email files has missed critical data and documents that would not have been attached to emails due to their size and that certain documents may have only been retained in shared drives.

items having been listed as "missing" in the first place. *See*, *e.g.*, Ex. A, Row 6 (annual PDE submissions to CMS for SilverScript)[2]; Row 7 (annual PDE submissions to CMS for Aetna); Rows 8 & 9 (Annual Summary DIR Reports submitted to CMS for SilverScript and Aetna). There is also potentially an issue regarding data produced showing point-of-sale prices (Row 12), but Defendants have said they will provide additional information in response to a Technical Issues letter we submitted to them on July 27.

With respect to Annual Summary DIR reports, (*see* Rows 8-9), which identify the amount of DIR reported to CMS for payment and final reconciliation purposes, there are at least 5 documents in the production for each year. We need to know which are final to evaluate the sufficiency of the production and to be able to rely on those documents in litigating the case, including quantifying damages. Defendants have thus far declined to identify final versions. Relator believes that identifying which versions are final would impose little burden on Defendants; would avoid the need for other discovery on the issue, such as a Rule 30(b)(6) deposition; and would allow Relator and the Court to evaluate whether Defendants' production has been sufficient. *See generally New Prime, Inc. v. Brandon Balchune Constr. Co., et al.*, 2016 WL 3742872, at *4 (M.D. Pa. July 13, 2016)(noting how lack of properly executed documents can impair party's ability to make litigation decisions).

**2. Aetna/Silverscript**. Caremark has objected to producing documents held by its wholly-owned subsidiaries SilverScript and Aetna. As to PDE submissions for Aetna to CMS, *see* Ex. A Row 7, Caremark has stated that it did not submit PDEs for Aetna and suggested that it does not have those documents. But Relator has cited documents indicating to the contrary, *e.g.*, Defendants' Answer to Sec. Am. Comp.(ECF 115, ¶ 92)("Defendants admit that CaremarkPCS Health, L.L.C. agreed to create Prescription Drug Event files and to submit such files to CMS on Aetna's behalf in accordance with the terms of the 2010 Agreement and CMS requirements, and did so."); CVS-BEHNKE-0041739 (Caremark stores PDE files for ten years)(Appx. to 4/23/2021 letter to Court); CVS-BEHNKE-1164386 (Caremark attests it will retain and store records concerning price data submitted to CMS). Defendants sent an email on August 26 explaining how ¶ 92 of their Answer may have been ambiguous, but that does not address the remaining evidence about Caremark's apparent possession of the information, let alone its corporate custody and control.

As to other documents concerning SilverScript and Aetna, Caremark has claimed it is not obligated to produce those documents because they are in the possession, custody or control of Caremark's subsidiaries. *See, e.g.*, Ex. A, Row 11 (annual bid submissions and related information for Aetna)[3]; Rows 13-14 (CMS-generated year end reconciliations with SilverScript and Aetna). Caselaw in the Third Circuit and elsewhere, however, generally holds that a parent corporation has control over its wholly-owned subsidiaries' documents and therefore must produce their documents. *See Dartell v. Tibet Pharmaceuticals, Inc.*, 2016 WL 11653632, at *2 (D.N.J. Feb. 26, 2016) (noting in dicta that courts routinely require parents to produce the documents of their subsidiaries); *Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395 (D.Del. 2002)("If a corporate entity is deemed to be in "control" of documents sought, a district court can compel the production of those documents, regardless of whether they are also in the possession and control of a non-party.

---

[2] In response to Relator's question whether Defendants have produced the complete set of SilverScript PDE submissions, Defendants have stated that they will soon be providing further information, but they have still not confirmed that all responsive data has been produced.

[3] It appears that Aetna has now produced these documents, but it does not appear that final submissions have been identified.

*See Pennwalt Corp. v. Plough, Inc.,* 85 F.R.D. 257, 263 (D.Del.1979) (holding that 'this occurs most often when a parent corporation is requested to produce documents of a wholly-owned subsidiary')"); *see generally Gerlin Intern. Ins. Co. v. C.I.R.*, 839 F.2d 131, 141 (3d Cir. 1988) ("where the agent-subsidiary can secure documents of the principal-parent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party."). *See also Local No. 1419, ILA, General Longshore Workers Union, AFl-CIO v. Smith*, 301 F.2d 791, 795 (5th Cir. 1962) (requiring union to produce records of its wholly owned subsidiaries); *In re ATM Fee Antitrust Litigation*, 233 F.R.D. 542, 545 (N.D.Cal. 2005) (compelling parent to produce documents held by wholly owned subsidiaries, because it had legal control over those documents).

Caremark has not represented or shown that it lacks custody or control of Aetna or SilverScript documents. Caremark merely states. for example, that "Caremark did not submit PDEs for Aetna for relevant time period" (Ex. A, Row 7), but does not disclaim possession, custody or control. In Rows 13 and 14, regarding CMS-generated reconciliations, Defendants state only that they do not believe responsive documents are in their "possession", saying nothing about "control". Similarly in objections to specific document requests, Caremark objected to the extent the request "seeks documents not in Defendants' possession, custody or control," (*e.g.*, Defendants' Objection to Document Request 54), without actually stating that responsive documents held by their subsidiaries are not in their possession, custody or control.[4]

**3. CVS Pharmacy Reconciliations**. Relator seeks a complete set of what we have called CVS Pharmacy reconciliation "look-alikes," (Ex. A, Row 16), so-called because they closely resemble spreadsheets that Caremark calls reconciliations for Walgreens and Rite Aid. Copies of both a Rite Aid reconciliation and a CVS Pharmacy "look-alike" document were handed up to Court at the July 28 hearing, pp 4, 5. Defendants say that "to the extent such documents may have existed, they are contained in Caremark's production of files from the Industry Analytics Share Drive," which is not sufficient and does not state whether previously existing documents may not have been preserved or may exist elsewhere. *See* Defendants' August 23, 2021 letter to Relator's counsel. Defendants' response is not sufficient. Defendants must conduct a diligent search and produce all responsive documents. *See Graco, Inc. v. PMC Glob., Inc.*, 2011 WL 1114233, at *43 (D.N.J. Mar. 24, 2011)(not sufficient to just state that responsive documents have been produced without specifying that all responsive documents have been produced).

**4. CVS Financial Information**. Further regarding CVS Pharmacy, Defendants have not appropriately produced documents responsive to Relator's numerous requests for CVS Caremark's corporate financial documents that will allow Relator to understand what Caremark, the PBM, paid CVS Pharmacy, both at the point of sale and as adjusted thereafter. *See* Ex. A, Rows 16 and 19; Relator's Fourth Set of Requests for Production, Requests 49-52. CVS Caremark owns CVS Pharmacy and managing or accounting for payments with a related party would likely differ from the way that true-ups happened between Caremark and independent chain pharmacies like Walgreens and Rite Aid. Upon receiving Relator's clarification of the types of documents she is seeking, Defendants again objected based on alleged burden and disproportionality, but they have not provided information to substantiate these claims. Given

---

[4] In an abundance of caution, Relator has subpoenaed Aetna and SilverScript also.

the fact that prescriptions through CVS Pharmacy account for a substantial portion of potential damages in this case, it is a high bar for Defendants to establish disproportionality.

Relator's requests call for "documents reflecting or evidencing any intra-corporate or related party agreement or transaction that identifies or pertains to the manner in which prices paid to CVS Pharmacy were determined, " *id.*, which Relator subsequently clarified to mean, inter alia, certain General Ledger entries relating to reallocation of revenues or profits between Caremark and CVS Pharmacy, budgets for Caremark and CVS Pharmacy with respect to claims paid by Caremark to CVS Pharmacy by line of business and detailed variance analyses with respect to claims paid by Caremark to CVS Pharmacy, by line of business.  Letter from Natalie Finkelman to Williams & Connolly dated July 27, 2021.   Financial documents that shed light on liability or damages in a case are appropriate targets of discovery.

Relator has compelling reasons to believe that Caremark was engaging in the same reporting of inflated drug prices in connection with CVS Pharmacy as was occurring through Walgreens and Rite Aid.  Relator alleges that Caremark set and raised Aetna's prices across the board, without regard to pharmacy; offered to improve Aetna's generic discount rate across all pharmacies; and offered to split any pharmacy price improvements with Aetna across all pharmacies. *See* ECF 110, Sec. Am. Comp. ¶¶ 100-114; 117-118. Caremark's conduct through CVS Pharmacy is demonstrated by, e.g., the multiple documents referring to Caremark implementing a global discount rate (or Generic Effective Rate, "GER") with CVS Pharmacy, *see* Appx 1-9 to 4/23/2021 letter to Court, the reconciliation "look-alikes" with CVS Pharmacy, *see* Ex. A, Row 16, and documents describing "restated margin" that appear to have reallocated profits as between Caremark as a PBM and CVS Pharmacy.  *See* Appx. 5-7, 14-18 to 4/23/2021 letter to Court.  Defendants' response that they have already produced various other types of documents is meaningless because those documents provide no visibility into the internal corporate transactions reflecting the handling of the inflated payments that Caremark caused CMS to make. Internal documents demonstrate what Caremark refers to as "restated margin," which is essentially two views of profitability where the amount of spread Caremark can "afford" to take on commercial claims is directly tied to the amount they (over)pay to pharmacies like Walgreens, CVS and Rite Aid on transparent claims, including Med D. Since CVS Pharmacy is "in the family," however, the trade-off was likely reflected higher in the corporate chain and with no need for careful documentation. Without the requested discovery, the precise mechanisms and amounts by which Caremark funneled the inflated CMS payments into its own pockets, or how Caremark set up its skewed payments to CVS Pharmacy, cannot be fully demonstrated by Relator. Caremark should be ordered to produce responsive documents.[5]

---

[5] Relator briefly responds to Defendants' suggestions that Plaintiffs simply failed to locate some of the documents she listed on the "Missing Documents" chart or asked repeatedly for the same information. In several instances, Relator could not confirm (and still cannot confirm) the completeness of Defendants' production absent Defendants identifying which documents are the "final" version of a particular document. In addition, Relator identified apparent gaps in Defendants' production of contracts, but Defendants then stated that some of the contracts remained in effect for many years, meaning that an apparent gap in the time period for contracts did not necessarily mean there were gaps in Defendants' production.  Defendants' statements on the Missing Documents chart

### B. Search Terms for Communications with CMS and pre-2010 Internal Documents at Caremark Concerning the Pharmacy Payment Structure

The parties continue to negotiate search terms and custodians to be used for various Document Requests, including Relator's Fifth Request for Production of Documents No. 57, as to which the Court expressly ordered such conferring. (ECF #171). If discussions are not successful, Relator will promptly raise any dispute with the Court.

### C. Industry Analytics Share File Production

As ordered by the Court, Defendants have provided some additional information about the contents of the Industry Analytics share file (or "compromise") production and the additional 2 terabytes of information as to which Relator has deferred production. Nonetheless, we are still not clear what specific document requests Defendants represent that the IA production responds to, or compromises, since Defendants are not required until their responsive brief to identify more specifically which document requests they believe the IA production satisfied.

While we only provide a preliminary response, we address Defendants' representation that the IA share file "should put to rest any further controversy regarding Caremark's production of documents relating to CVS Pharmacy, Walgreens or Rite Aid." ECF #144. Defendants' response on the Missing Documents chart regarding CVS financial documents for drugs dispensed through CVS Pharmacy (Row 19), and in their August 23 letter, for example, continue to assert inappropriate objections. Additionally, there are unresolved issues that have been addressed in Relator's Technical Questions correspondence of July 27, 2021, which the parties are just beginning to address. Accordingly, the IA production has not "put to rest any further controversy regarding Caremark's production of documents relating to CVS Pharmacy, Walgreens or Rite Aid."

Again, we cannot state precisely what other deficiencies we see with the IA share file production until we see what Defendants identify as the requests to which that production is supposedly responsive. We note also that we are continuing to work with our experts to decide whether to request the additional 2 terabytes of data that have been offered by Defendants from the IA share file. The experts' views as to the usefulness of that data will be informed, in part, by information yet to be obtained from Defendants.

## III. REQUESTED RELIEF

Defendants should represent that (1) they have produced all responsive, non-privileged documents in their possession, custody or control, including documents of their subsidiaries; (2) identify which documents are final versions or produce such final versions; and (3) where they have asserted objections (other than on grounds of privilege), they should state whether documents have been withheld (or searches not done) on the basis of those objections, with substantiation for any claims of disproportionality or burdensomeness.

---

were often unclear, hence the request for written confirmation. Defendants stated that they could not understand what documents Relator referenced as CVS financial documents (*see* Ex. A, Row 19), but Defendants ignored the comment in the Notes section stating that Relator had submitted a letter dated July 27, 2021 providing further clarification – and they ignored the letter itself, only belatedly responding in some substantive manner in their letter dated Aug. 23, 2021.

                                        Respectfully submitted:

Dated: August 27, 2021

                                        */s / Susan Schneider Thomas*
BERGER MONTAGUE PC
Susan Schneider Thomas
David F. Sorensen
Joy P. Clairmont
Caitlin Coslett
William Fedullo
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
E-mail: sthomas@bm.net
           dsorensen@bm.net
           jclairmont@bm.net
           ccoslett@bm.net
           wfedullo@bm.net

Natalie Finkelman Bennett
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
E-mail: nfinkelman@millershah.com

Jayne A. Goldstein
MILLER SHAH LLP
1625 N. Commerce Parkway, #320
Fort Lauderdale, FL 33326
Telephone: (866) 849-7545
Facsimile: (866) 300-7367
Email: jagoldstein@millershah.com

*Attorneys for Plaintiff-Relator*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2021, a true and correct copy of the foregoing was filed and served electronically using the ECF system.

*/s/Susan Schneider Thomas*