LAW OFFICES
# WILLIAMS & CONNOLLY LLP

DANIEL M. DOCKERY
(202) 434-5698
ddockery@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
(202) 434-5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

June 3, 2022

The Honorable Mitchell S. Goldberg
United States District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106
Chambers_of_Judge_Mitchell_S_Goldberg@paed.uscourts.gov

    Re:    *U.S. ex rel. Behnke v. CVS Caremark Corporation, et al.*, CA No. 14-cv-00824

Dear Judge Goldberg:

    Pursuant to Your Honor's order entered May 31, 2022, ECF No. 216, we submit this letter on behalf of Defendants ("Caremark") in response to Relator's letter filed on May 26, 2022, ECF No. 215. We also respond herein to Relator's "follow up" letter filed on June 2, 2022.[1]  ECF No. 217.

    Caremark has already provided a considerable breadth of Rule 30(b)(6) testimony in this matter, and has agreed to provide still more:

- Relator has already taken <u>more than ten hours</u> of Rule 30(b)(6) deposition testimony from two witnesses (Rebecca Justice and Elena Kinney) designated by Caremark to testify on six topics that Relator requested Caremark prioritize (Nos. 2, 3, 7, 8, 12, 14).[2]

- Relator is scheduled to take Rule 30(b)(6) deposition testimony from a third Caremark designee (James Margiotta) next week on yet another topic (No. 6).

- Caremark has offered dates on which two more corporate designees (David Azzolina and Kevin Blake) are available to testify on another four additional topics (Nos. 4, 9, 20, 22).

---

[1] Although Relator's two letters together total six pages in length, this response has been kept to only five pages.

[2] As discussed in prior correspondence with the Court, Relator requested that Caremark prioritize nine topics from Relator's Notice. ECF No. 204, at 2. All nine topics have been addressed: six via the testimony of Rebecca Justice and Elena Kinney, and three via other means (one tabled, one the subject of document production, and one the subject of information provided by Caremark via correspondence).

WILLIAMS & CONNOLLY LLP

June 3, 2022
Page 2

Relator's main complaint in her letter to the Court last week (May 26) was that Caremark had not yet identified designees and dates on five topics, ECF No. 215. That complaint was premature. <u>Less than an hour</u> after Relator filed her May 26 letter, Caremark identified to Relator its fourth corporate designee (Kevin Blake) and offered dates for his deposition. And less than twelve hours thereafter, Caremark identified its fifth designee (David Azzolina). Had Relator simply picked up the phone or e-mailed Caremark's counsel to inquire about Caremark's expected timing before filing a letter with the Court, Relator would have learned that Caremark was on the verge of being able to identify these two designees and provide dates on which they would be available to cover four more Rule 30(b)(6) topics. But rather than reaching out to Caremark's counsel to check on timing (or for a final meet and confer), Relator jumped the gun and filed a letter asking the Court to compel Caremark to identify designees.

Given that Relator's May 26 request for relief was almost entirely mooted within hours after Relator put it before the Court, Caremark suggested that Relator consider withdrawing it. Instead, Relator turned around and filed yet another letter. ECF No. 217. In this new letter filed yesterday, Relator attacks (1) Caremark's proposed limitations on the topics for which it designated corporate representatives last week, (2) Caremark's designation of Kevin Blake to serve as one of those corporate representatives, and (3) Caremark's continued objection to providing a designee on one topic. *Id.* None of Relator's complaints have any merit.

### Caremark's "Limitations" on Topics 4, 9, 20, 22

Relator's suggestion that Caremark has only recently proposed limitations on these four topics is simply wrong. As part of the meet and confer process, Caremark had proposed limited versions of these topics in a letter to Relator on <u>April 28, 2022</u>. In that letter, Caremark expressly stated that as to these four topics, Caremark would only prepare a witness "to testify generally about high-level description" of the subject matter (Nos. 4, 9, 22), or else "to testify generally about documents" (No. 20).[3] Caremark did not expect that Relator would find this language problematic, given that Relator had previously agreed to <u>nearly identical limiting language</u> proposed by Caremark as to all six topics on which Rule 30(b)(6) testimony has already been completed. And indeed, Relator's letter of May 4, 2022 purported to "agree to Defendants' proposals," with certain proposed "clarifications."

Caremark considered these "clarifications" as it worked to identify designees for the topics in question. Shortly after Caremark identified the designees (on May 26/27), Caremark provided a letter on May 31 addressing which of the clarifications Caremark was willing to accept, and offering modified language that incorporated several of Relator's clarifications. Contrary to Relator's assertions, there was nothing "untimely" or "prejudicial" about it. The positions in Caremark's May 31 letter were consistent with Caremark's prior correspondence, and were provided at least two weeks in advance of when the depositions could be scheduled.

---

[3] Relator's suggestion that there is some connection between this proposed language and Caremark's designation of Mr. Blake, ECF No. 217 at 2, is groundless; Caremark proposed this language across a range of topics weeks or months before Mr. Blake was designated, including topics covered by Caremark's four other designees.

WILLIAMS & CONNOLLY LLP

June 3, 2022
Page 3

Caremark's rejection of a few of Relator's proposed "clarifications" were also reasonable and proportional (particularly given that none of these topics were among those Relator prioritized):

- Topic 4:  The agreed scope of this topic encompasses Caremark's policies and practices concerning "pharmacy contract provisions relating to (1) MAC prices and (2) GER guarantees for drugs dispensed to beneficiaries of Medicare Part D plans."  Caremark declined to offer Rule 30(b)(6) testimony on how those policies and practices "actually operate."  This is consistent with limitations Relator accepted as to Topics 7 and 8, which also concerned policies and practices.  Relator is asking about a time period that at its most recent is seven years in the past, and extends back more than twelve years in the past.  It is unreasonable (and unnecessary) to ask a corporate representative to go beyond preparing on the corporate policies and practices that were in place, and testify also to how those policies and practices "actually operate[d]."  That is a subject for fact witness testimony, and indeed Relator has already deposed John Lavin (who was responsible for contracting with pharmacies and pharmacy networks during the relevant period) for more than six hours.  Relator also has the contracts themselves, which are the best evidence for how policies and practices regarding pharmacy contracting "actually operate[d]."

- Topic 9:  Relator contends that Caremark has "refused to identify" the individuals responsible for "specific reconciliations."  But that is not what Relator had proposed in her May 4 letter.  Relator's purported "clarification" of this topic in her May 4 letter was as follows: "Relator expects that this 'general,' 'high-level description' will include, among other things, identification of the employees and/or groups responsible" for "preparing and transmitting to pharmacies final reconciliations pursuant to pharmacy contract provisions relating to GER provisions."  Caremark agreed to identify the "groups" responsible for that function, but declined as to "individuals," because it would be disproportionate to prepare a witness to identify all of the specific individuals associated with that business function over a seven-year period.  Relator's proposal in her letter to the Court yesterday that Topic 9 be limited to "testimony identifying who created the reconciliations that Caremark has identified as final" is new and considerably narrower than what Relator proposed on May 4; Caremark is willing to make a reasonable investigation of that question.[4]

- Topic 20:  Relator acknowledges that Caremark has agreed to prepare a witness to testify "generally" about certain documents, but bemoans that Caremark has declined to provide Rule 30(b)(6) testimony "about the details of relevant documents."  The problem is that the "relevant documents" in question are massive spreadsheets; Relator advised that she would "focus" on four particular tabs in each of those spreadsheets, but just one of those

---

[4] Relator's contention in a footnote that she should be entitled to Rule 30(b)(6) testimony regarding the extent to which "Caremark's pharmacy reconciliations contain or can be produced" with certain rows of information is unreasonable.  As Relator makes clear in the footnote, she is aware that some produced reconciliations contain such rows and others didn't.  As to those that contain such rows, it is apparent on their face.  And as to those that do not contain such rows, Relator's hypothetical question of whether they could have been generated differently than they were actually generated many years ago is at best of marginal relevance and disproportionate.

WILLIAMS & CONNOLLY LLP

June 3, 2022
Page 4

tabs in one spreadsheet contains more than sixty columns and over 1,500 discrete fields. Caremark's proposed compromise was to offer "general testimony" about the documents, <u>including</u> the particular documents Relator had identified and descriptions of the tabs within those documents that Relator had identified, but that Caremark "will not prepare a witness to testify 'specifically' about the massive volume of details encompassed by these complex spreadsheets." That limitation is reasonable and proportionate.

- Topic 22: Caremark agreed to provide testimony on the <u>facts</u> called for by this topic—Caremark's communications with CMS regarding specific subject matter, including to the extent the facts of this topic overlap with the facts of certain RFAs. But Relator provides no support at all for the proposition that Caremark must prepare a witness to testify regarding the responses to the RFAs themselves, particularly given that the RFAs are not even mentioned in Topic 22 as it appears in Relator's Amended Notice. Likewise, Relator tries to smuggle into this topic communications between PCMA (a trade group that Caremark belongs to but does not control) and CMS, despite the fact that PCMA is mentioned nowhere in actual language of Topic 22. Relator's effort to expand the scope of Topic 22 beyond its actual language is flatly improper.

<u>Caremark's Objection to Topic 13.</u>

There is only a single topic in dispute on which Caremark has not offered a witness—Topic 13. Caremark never agreed to offer a witness on that topic, but did offer to consider doing so <u>if</u> Relator could offer further clarity as to what "training" it was seeking testimony on. Relator responded by identifying two documents—neither of which concerned training. But one of the documents (a written policy) appeared to fall within the scope of Topic 4, and Caremark agreed to address the document in the context of Topic 4. Relator tries to skirt around her inability to identify documents that clarify the "training" on which Caremark should prepare a witness to testify by promising she will "identify deposition exhibits in advance [of the deposition]." But she has already tried to identify documents on point, and succeeded only in identifying a document that falls within a <u>different</u> topic. The scope of this topic is uncertain, and Relator's inability to provide further clarity reinforces both that this topic is not central to the case, and that that the burden on Caremark of preparing a witness would be disproportionate.

Relator's suggestion that Caremark is not allowed to object because it "did not seek a protective order" is frivolous. Through the meet and confer process, Relator has expressly dropped or "tabled" five topics, and has agreed to scope limitations on every topic on which Caremark has offered testimony. This demonstrates that the meet and confer process has been productive and largely successful, and, had Caremark filed a protective order months ago, <u>it would have been premature</u>.[5]

---

[5] *New England Carpenters' Health Benefits Fund v. First Databank, Inc.*, 242 F.R.D. 164, 165-66 (D. Mass. 2007), is inapposite; that case involved a party "delaying until the final date for discovery only to advise the opposing party that it would not produce a deponent while simultaneously informing it that the defense would have to file a motion to compel in order to obtain attendance of the organization's representative for deposition." *Consumer Fin. Prot.*

WILLIAMS & CONNOLLY LLP

June 3, 2022
Page 5

        <u>Caremark's Designation of Kevin Blake on Three Topics</u>

        Relator's suggestion that Caremark should not allowed to designate Kevin Blake (an in-house attorney) as the corporate representative on three topics is both legally and factually meritless.  Legally, it is meritless because Rule 30(b)(6) does not impose any obligation to select a corporate designation with personal knowledge of the subject matter.  *See Palakovic v. Wetzel*, 2019 WL 6896659, at *8 (W.D. Pa. Dec. 18, 2019) ("A 30(b)(6) deponent need not have personal knowledge of the noticed topics").  And the facts of Caremark's conduct with regard to designating Rule 30(b)(6) witnesses in this matter clearly establish that Caremark has done so in good faith.  Mr. Blake, who is designated on only three topics, is one of <u>five</u> different designees Caremark has offered to testify across a range of various 30(b)(6) topics; none of the other designees are lawyers.  And as to one of the topics on which Mr. Blake is offered (Topic 4), Caremark openly shared with Relator that it had sought to designate someone else: John Lavin, the former employee mentioned above who was responsible for the subject matter of Topic 4 during the relevant time period.  John Lavin declined, however, and as a former employee Caremark could not compel him to serve as a Rule 30(b)(6) witness.  Relator was in no way prejudiced; she subpoenaed Mr. Lavin and deposed him as a fact witness for more than six hours.

        <u>Relator's Request for a Conference.</u>

        Relator requests a conference to address Plaintiffs' "likely need for more than 15 depositions in this complex case" and other unspecified "issues that likely will require Court involvement."  The last time Relator met and conferred with Caremark about the number of depositions in this case was months ago, when Caremark agreed to increase the limit from 10 (the presumptive limit established by Fed R. Civ. P. 30) to 15.  Relator's request for a conference to further increase that limit without meeting and conferring first with Caremark is improper.  And as to other unspecified "issues," Relator's request for a conference should not be entertained until Relator can actually specify what issues need to be addressed and represent that she has met and conferred with Caremark on those issues in good faith.

                                                                     Respectfully yours,

                                                                   <u>*/s/ Daniel M. Dockery*</u>
                                                                     Daniel M. Dockery

---

*Bureau v. Borders & Borders, PLC*, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *6 (W.D. Ky. June 29, 2016) (distinguishing *New England Carpenters' Health Benefits Fund*).  That is nothing like the situation here.  Caremark has engaged in a good faith meet & confer process, has already provided testimony on some topics, has scheduled or offered dates for designees on still more, and resolved most of the disputed issues regarding the Rule 30(b)(6) notice without court involvement.  Relator's suggestion that Caremark should have run to the courthouse with a premature motion or letter is not consistent with Local Rule 26.1(f), not a required practice under either the Local Rules or the Federal Rules of Civil Procedure, and would have been counter-productive and a misuse of judicial resources.