**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* SARAH BEHNKE<br><br>Plaintiff-Relator,<br><br>v.<br><br>CVS CAREMARK CORP., *et. al.*,<br><br>Defendants. | **Civil Action No. 2:14-cv-00824 (MSG)** |

**DESIGNEE DEPOSITION DISPUTE TABLE**

In accordance with the Court's June 10, 2022 Order, ECF 220, the parties respectfully submit this deposition dispute table regarding the scope of Caremark's Rule 30(b)(6) testimony.

I.      **TOPIC #9**

    **A. Relator's Version**

Explanation of the processes for preparation and transmittal of Reconciliations between You and any pharmacy pursuant to any pricing guarantee or term (e.g., GER, contractual price guarantee, chargebacks), including a) employee(s) or groups responsible; b) any policies, procedures, and practices related to those processes, and c) when and how such policies, procedures, and practices were formulated, implemented, enforced, reviewed, and modified. This includes, for example, identification of who prepared the Reconciliations and how, and what basic column headings and abbreviations in the Reconciliations mean.

    **B. Relator's Explanation of Relevance**

Topic 9 seeks testimony concerning Caremark's reconciliations with the pharmacies, reconciliations which show the prices Caremark paid pharmacies, including for generic drugs dispensed to Medicare Part D beneficiaries. These pharmacy reconciliations are highly relevant and the sought testimony is proportional because the issue in this case is whether the prices paid to the pharmacies for such generic drugs were properly reported to CMS or whether, as Relator contends, the generic drug prices reported to CMS for the Medicare Part D claims were false and

1

fraudulent because those reported prices were higher than the prices actually paid to the pharmacies given the application of the overall GER (generic effective rate) governing Caremark's payment to the pharmacies for both commercial and Medicare Part D drugs, as reflected on the reconciliations.

Relator is entitled to detailed and specific testimony about these pharmacy reconciliations, including how the reconciliations were created, what data and documents were used to create them, what specific fields and column headings mean, why they are included, and how they are applied in the spreadsheets. That some of Caremark's 30(b)(1) witnesses have given some testimony about these pharmacy reconciliations does not relieve Caremark of its obligation to provide complete, prepared, and informed testimony about these documents. Caremark's argument that Relator could or should have deposed Caremark employees with direct knowledge of the reconciliations is particularly disingenuous given that Caremark has thus far refused numerous requests to identify the individuals who created and were responsible for the pharmacy reconciliations (and given the current 15-deposition limit in place). Relator is not proposing a "memory test," as Caremark claims, but rather seeks testimony from a corporate designee who has a full understanding of the reconciliations and how they operate and has been fully prepared to testify about these documents.

Despite the relevance of these documents, Caremark seeks to limit the scope of testimony on Topic 9 in several significant and prejudicial ways:

*First*, Caremark has agreed only to make "reasonable efforts" to prepare a corporate representative to testify "generally about a high-level description of Caremark's processes for preparing and transmitting to pharmacies final reconciliations pursuant to pharmacy contract provisions relating to GER guarantees." Caremark has not explained exactly what is included in the "general" "high-level" testimony it agrees to provide. The annual pharmacy reconciliation

documents are not voluminous and Caremark knows what they are.  Caremark should provide specific testimony about, for example, what basic column headings and abbreviations appearing in these documents mean, and about how these documents were created (for example, based on what data sources) as well as other information (such as why some rows and columns were or were not included in certain of the reconciliations).  This information is highly relevant and only obtainable from Caremark.  In addition to serving the Amended Rule 30(b)(6) Notice almost six months ago, Relator sought to obtain information regarding the pharmacy reconciliations through Relator's Second Set of Requests for Admissions served January 13, 2022, but Caremark refused to provide responses.  Caremark should therefore be ordered to produce a fully-prepared witness to give detailed testimony about the pharmacy reconciliations.

*Second*, Relator seeks testimony regarding the share of Caremark's Medicare Part D business that is comprised of Aetna plans and the share that is comprised of SilverScript plans. *See* First Amended Complaint, ECF 85, ¶¶ 3, 4.  This information is included in rows 13 and 16 of one pharmacy reconciliation (CVS-BEHNKE-0004380) ("SSI [SilverScript] Totals" and "Aetna MEDD Totals"), but does not appear on the face of other reconciliations.  This information is relevant to (a) Aetna's and SilverScript's respective percentage shares of the dollars paid to the pharmacies for generic drugs through Caremark's Medicare Part D Business, and (b) Aetna's and SilverScript's respective percentage shares of the generic prescriptions filled through Caremark's Medicare Part D Business for each year, which in turn are relevant to Relator's damages calculations.  Caremark employee Elena Kinney testified that this information—Aetna's and SilverScript's shares of Caremark's business—was readily available to Caremark.  Transcript of Elena Kinney, May 10, 2022 at 268:18-269:3 (this information could be broken out at the client level).  Relator also sought this information by letter dated May 6, 2022, but Caremark's counsel

has not provided it. Relator also propounded a document request seeking documents sufficient to show the shares of Caremark's Medicare Part D business that are attributable to Aetna and to SilverScript, but Caremark did not produce documents in response to this request. Relator also served an interrogatory asking Caremark to identify the shares of Caremark's Medicare Part D business that are attributable to Aetna and to SilverScript, but Caremark did not provide a response. Caremark's Rule 30(b)(6) witness should be compelled to provide testimony on this relevant subject that is contained within the reconciliations in light of Caremark's failure to provide this information (a) in response to Relator's May 6, 2022 letter, (b) in response to Relator's targeted document request, or (c) in response to Relator's interrogatory seeking this information.

Caremark's argument against providing testimony on this Aetna/SilverScript share issue misstates the relevance of the sought testimony. Testimony regarding the extent to which Caremark possesses documents or data used to create the pharmacy reconciliations that either show or could be used to calculate the Aetna and SilverScript shares falls within the scope of the topic, as drafted, and is relevant to Relator's damages calculations; this testimony is also relevant to the parties' dispute regarding the sufficiency of Caremark's document production and Caremark's refusal to provide this information by interrogatory response, both of which likely will be addressed in the parties' June 24, 2022 filing pursuant to ECF 221.[1]

---

[1] Although this issue is not yet before the Court, Relator disputes Caremark's suggestion that a party cannot be required to assemble and pull data within its control and produce responsive documents based on that data. *See, e.g., Hall v. Marriott Int'l, Inc.*, No. 319CV01715JLSAHG, 2021 WL 1906464, at *10-12 (S.D. Cal. May 12, 2021) (requiring defendant hotel franchisor to compile and produce revenue data from its franchisees); *Mervyn v. Atlas Van Lines, Inc.*, No. 13 C 3587, 2015 WL 12826474, at *5 (N.D. Ill. Oct. 23, 2015) (requiring moving business cooperative to produce shipping data from preexisting database, even though pulling that data would require the cooperative to spend one week writing a computer script, one week running the script on the database, and one week checking the results); *id*. at *6 ("requiring a party to query an existing database to produce reports for opposing parties is *not* the same as requiring the creation of a new document. Thus, the argument that Plaintiff's request is outside the scope of Rule 34 is unfounded.") (emphasis in original).

**Finally**, Caremark's conduct in connection with the June 15, 2022 Rule 30(b)(6) deposition regarding Topic 22 shows the need for Court intervention.  With respect to Topic 22, Caremark agreed to provide 30(b)(6) testimony in the form of "a high-level description of Caremark's communications and contacts with CMS during the period of January 1, 2010, through December 31, 2016, concerning what, if any, drug price reporting obligations apply under Medicare Part D in connection with GER guarantees made by Caremark to pharmacies."  But when Caremark's Rule 30(b)(6) designee on Topic 22 was asked questions about what Caremark did, for example, "to formulate any oral or written responses to CMS regarding GER-related issues" or to confirm the accuracy of its communications with CMS, Caremark took the position that any "internal workings and other things that may be, you know, somehow related to those communications are outside the scope of what you've been designated as a corporate representative on."  Realtime Draft Transcript of David Azzolina, June 15, 2022 at 89:16-92:6.  This demonstrates that Caremark's proposal to limit 30(b)(6) testimony to general "high level descriptions" is not sufficient because Caremark interprets "high level" to cut off legitimate inquiry.

This is a potentially very significant problem as to Topic 9, for which Mr. Blake is the designee.  Mr. Blake appears to have no personal knowledge of the subject matter of the dispute. While Caremark may choose its 30(b)(6) designee, if Mr. Blake is prepared only at a "high level," as defined by Caremark, given his lack of personal knowledge, we likely will be heading for a deposition with a witness inadequately prepared to answer questions concerning the pharmacy reconciliations, forcing Relator to return to this Court.  Rejecting Caremark's attempt to unduly limit Topic 9 will force Caremark to adequately prepare Mr. Blake, limiting the potential for further dispute, which we wish to avoid.

Caremark's proposed limitations to Topic 9 should therefore be rejected.   Allowing

Caremark to limit the scope about these highly relevant pharmacy reconciliations in the manner Caremark proposes would prejudice Relator, particularly given the current 15-deposition limit (about which we are meeting and conferring with Caremark), and given that some of Caremark's Rule 30(b)(1) witnesses thus far have testified that they know or remember little about the operation of the pharmacy reconciliations.

### C. Caremark's Version

A high-level description of Caremark's policies and procedures for preparing and transmitting to pharmacies final reconciliations pursuant to pharmacy contract provisions relating to GER guarantees, including: (a) the individuals responsible[2]; and (b) high-level information regarding a reasonable number of standard rows, columns, or abbreviations in Caremark's final pharmacy reconciliations, to the extent Relator identifies them at least 7 business days in advance of the Rule 30(b)(6) deposition.

### D. Caremark's Justification for Change

Caremark does not dispute that the pharmacy reconciliations are relevant; Caremark readily produced them over three years ago, and Dom Gugliuzza, the Vice President of Caremark's Industry Analysis division during the relevant time period, testified last week at length regarding pharmacy reconciliations, including explaining the meanings of various headers and calculations in various reconciliation spreadsheet cells. *See, e.g.*, June 10, 2022 Depo. Trans. (Rough) at pp. 141–71; *see also* Fed. R. Civ. P. 26(b)(2)(C)(ii) (A court "must limit the frequency or extent of discovery . . . if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."). The problem with Relator's demand for Rule 30(b)(6) testimony about the reconciliations is that Relator *still* cannot specify what Topic 9 demands regarding these multi-faceted, complex spreadsheets that

---

[2] The parties have agreed that the phrase "individuals responsible," as used in their respective Topic 9 formulations, means "the individuals who created the final reconciliations and those with oversight of that process." *See* June 17, 2022 Email from C. Coslett to S. O'Connor.

draw upon information from numerous areas of Caremark's business and incorporate nuanced calculations. *See* Fed. R. Civ. P. 30(b)(6) (requiring that Rule 30(b)(6) notices "describe with reasonable particularity the matters for examination").

Relator's Rule 30(b)(6) notice purports to seek information about the "*processes for preparation and transmittal*" of pharmacy reconciliations, and Caremark has agreed to prepare a representative on a "high-level" description of that process. Yet, when Relator describes what Topic 9 must include from her perspective, it is clear that her formulation of Topic 9 *does not* adequately specify—as Rule 30(b)(6) requires—what discrete information from or about the reconciliations a Caremark designee would need to prepare on and testify to. *See supra* p. 3 ("Caremark should provide specific testimony about, *for example*, what basic column headings and abbreviations appearing in these documents mean and about how these documents were created (*for example*, based on what data sources) *as well as other information* (*such as* why some rows and columns were or were not included in certain of the reconciliations)."). Most perplexingly—and indicative of Relator's *post hoc* attempts to shoehorn unrelated or unnoticed subject matter into the noticed topics—Relator now claims that Topic 9 ("*processes for preparation and transmittal*" of pharmacy reconciliations) somehow includes "the share of Caremark's Medicare Part D business that is comprised of Aetna plans and the share that is comprised of SilverScript plans." *Supra* p. 3. Relator makes this leap on the basis that *one non-standard* pharmacy reconciliation Caremark produced contained a line item relating to that information.[3] *See id*.

---

[3] As Relator previously explained it, she wants corporate testimony regarding the "extent to which Caremark's pharmacy reconciliations contain or can be produced with rows including information ('SSI [SilverScript] Totals' and 'Aetna MEDD Totals') that is included in only one reconciliation produced in this case." June 2 Ltr to Court at 2 n.3; June 6 Ltr to Court at 2. Relator's submission here confirms that she seeks this made-for-litigation information to facilitate damages analyses she wishes to conduct and to develop fodder for an ongoing discovery

Caremark cannot fairly be required to prepare a corporate designee on the unnoticed topic of the complete details of all copies of Caremark's pharmacy reconciliations, *see, e.g.*, *United States ex rel. Fry v. Guidant Corp.*, No. 3:03-0842, 2009 WL 3103836, at *3 (M.D. Tenn. Sept. 24, 2009) (A "broad" Rule 30(b)(6) topic does not "give rise to an obligation to prepare a witness to answer every conceivable detailed question relating to the topic."), particularly where Relator had access to former and current Caremark employees with direct knowledge of the reconciliations and the ability to prioritize depositions of other such employees if she so chose.  *See* Fed. R. Civ. P. 26(b)(1).  Rule 30(b)(6) depositions are not meant as substitutes for depositions of a party's individual employees more familiar with the intimate details of the subject matter at issue.  *See, e.g.*, *Costa v. Cnty. of Burlington*, 254 F.R.D. 187, 190–91 (D.N.J. 2008).  Caremark's proposed formulation of Topic 9 hews to the actual "processes"-related subject-matter of Relator's notice, without unfairly committing its designee to a "memory contest" or an ability to speak with "encyclopedic authority," neither of which is required by Rule 30(b)(6).  *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 322 F.R.D. 350, 361 (N.D. Iowa 2017); *Anderson v. Domino's Pizza, Inc.*, No. 11-cv-902, 2012 WL 1684620, at *4 (W.D. Wash. May 15, 2012).

---

dispute.  In any case, whether "Caremark's pharmacy reconciliations . . . *can be produced*" with additional information is irrelevant and inconsistent with Caremark's discovery obligations. Litigation parties "have no duty to create documents" or modify them to answer discovery requests; they need only produce documents or data to the extent and in the form that it already existed.  *Miller v. Experian Info. Sols., Inc.*, No. 3:13-cv-90, 2014 WL 5513477, at *2 (S.D. Ohio Oct. 31, 2014); *accord, e.g.*, *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-cv-620, 2012 WL 298480, at *5 (E.D. Pa. Jan. 31, 2012).  And the only such information that could possibly be relevant here is how, at the time of the events at issue in this case, Caremark *did* produce its pharmacy reconciliations, which is covered by Caremark's proposed Topic 9.

Relator claims her formulation of Topic 9 is necessary because Caremark's designee would not be adequately prepared if the topic were limited to the "high-level description" Caremark proposes.[4]  This Court already has ordered that "[a]ny issues regarding the adequacy of the designee's preparation should be addressed after the deposition has taken place."  Order at 2 n.1, Dkt. No. 220.  And, in any event, Relator has it backwards.  Preparing any corporate designee—no matter their individual background—to field limitless questions about the details and cell-by-cell contents of Caremark's pharmacy reconciliations would present an immense burden and would *increase* the possibility that the designee would not be able to provide all responsive information.

Caremark's proposed formulation strikes the proper balance, enabling Relator to obtain explanations of a reasonable number of standard fields in the reconciliations so long as Relator gives adequate notice of those fields ahead of the deposition so that Caremark's designee can properly prepare.

## II.   TOPIC #20

### A.  Relator's Version

Caremark will agree that, within the topic of Caremark's GER tracking with respect to CVS Pharmacy (Topic 20), if, by Tuesday, June 21, Relator identifies the specific fields within any specific documents (including CVS-BEHNKE-1813534, CVS-BEHNKE-1814124, CVS-BEHNKE-0243680, and CVS-BEHNKE-04717720) about which Relator requests that Caremark's Rule 30(b)(6) designee be prepared to *specifically* testify, then by Friday, July 24, Caremark will assess the burden of so preparing its designee and notify Relator whether, pursuant to that burden, it objects to preparing such testimony.

---

[4] Relator also rebuffs Caremark's "high-level description" formulation because Relator was dissatisfied with the testimony of a different Caremark representative on a different Rule 30(b)(6) topic that required a "general" "high-level description."  *See supra* p. 5.  But Mr. Azzolina could not testify to some of Relator's questions not because he prepared only to give a  high-level description, but rather because the information Relator sought (*i.e.* Caremark's internal strategy and preparations for communicating with CMS) was *substantively different* from the actual agreed-upon topic (*i.e.* Caremark's actual communications with CMS).

### B. Relator's Explanation of Relevance

This topic seeks testimony regarding tracking the generic effective rate (GER) with regard to CVS Pharmacy. This topic is undisputedly relevant to damages on fraudulent price reporting of generic drugs purchased from CVS Pharmacy, and Caremark has agreed to prepare its Rule 30(b)(6) designee to testify generally about the portions of the specifically enumerated documents reflecting Caremark's tracking of a generic effective rate with respect to CVS Pharmacy. The parties' dispute involves the extent to which Caremark will provide <u>specific</u>—not general— testimony about the documents to be covered at this deposition. Relator contends that specific testimony about certain fields and rows is relevant and proportional because these documents are, as Caremark has emphasized during the meet and confer process, long, complicated documents that Caremark understands and can explain through Rule 30(b)(6) testimony. In addition, the relevance of these documents is demonstrated by the fact that Caremark cited these documents in its interrogatory responses.

***The parties hope to resolve any dispute regarding Topic 20 through further meet and confer without Court intervention.*** To address Caremark's burden argument, Relator has agreed to identify in advance of the deposition the specific documents that will be covered, including the specific tabs thereof, and has already identified four of them by Bates number. In addition, to the extent Relator seeks detailed testimony about specific rows and columns, Relator will identify those sufficiently far in advance as well, and Relator will be limited to a reasonable number of specific rows/columns/fields in the spreadsheets. Specifically, by Tuesday, June 21, 2022 Relator will, to the best of her ability, identify the documents and tabs thereof that will be the subject of questioning at the deposition, as well as fields/rows/columns about which Relator seeks detailed testimony. Caremark has agreed to advise, upon receiving the list of documents and fields, whether it contends that preparing a witness to testify about those fields would be unduly burdensome, and

10

Caremark reserves all rights given that, without knowing now what fields Relator might identify, it cannot assess the burden of preparing its corporate representative on the subject matter of those fields (which Caremark has represented could vary).   Relator reserves all rights to identify additional material after June 21, 2022, as far in advance of the deposition as possible, and Relator agrees that Caremark can reserve all rights to raise burden objections as well, including based on timing if any documents, tabs, or rows/columns are identified after June 21, 2022.[5]   Relator is hopeful that Caremark will raise no such burden argument given the identification of documents and fields in advance of the deposition but, if the parties do reach impasse, they will alert the Court.

### C.  Caremark's Version

General explanations regarding Caremark's tracking of a generic effective rate with respect to CVS Pharmacy, including as reflected in CVS-BEHNKE-1813534, CVS-BEHNKE-1814124, CVS-BEHNKE-0243680, and CVS-BEHNKE-0471772, focusing on descriptions in the tabs labeled 'Summary,' '[year] Proj.,' 'Daily Summary,' and 'Monthly summary' in those documents.

### D.  Caremark's Justification for Change

Caremark's formulation of Topic 20, including by reference to the four documents and specific tabs cited therein, properly balances Relator's request for information regarding Caremark's tracking of a generic effective rate against the burden to Caremark of preparing and presenting a corporate representative on that complex topic.   Caremark has committed to provide a corporate representative prepared to testify to "[g]eneral explanations" of Caremark's GER tracking related to CVS Pharmacy.   But requiring detailed familiarity on even one of the particular tabs of even one of the GER tracking spreadsheets identified in both parties' Topic 20 formulations would

---

[5] This reservation of rights is reasonable.  Relator cannot agree that Tuesday, June 21 is a drop dead date for identification of documents, tabs, or specific rows/fields.  As Caremark is itself aware, having produced documents relevant to Mr. Azzolina's deposition the day before the deposition, additional material may be identified during deposition preparation.  Also, the deposition is currently scheduled for June 28, 2022.  If that date were to be postponed, that would affect whatever burden Caremark could claim to materials being identified after June 21, 2022.

present an unjustified burden: just one such tab contains more than sixty different categories of information and over 1,500 individual data fields.  Preparing to adequately explain such a breadth and depth of specifics could, depending on the field at issue, necessitate deep study of complex calculations and a time-consuming and extensive investigation involving a substantial volume of documents and a bevy of subject-matter experts.  In the interest of avoiding burdening the Court with hypothetical disputes, however, Caremark has agreed to assess the particular burdens of providing more specific testimony on a reasonable number of particular fields in the four identified spreadsheets or other "similar" documents, *if Relator specifies those fields sufficiently far in advance* of Caremark's designee's deposition.  Relator has not yet done so, but the parties have reached agreement insofar as Relator does so by Tuesday, June 21, one week ahead of the Rule 30(b)(6) deposition on this Topic.[6]

The parties diverge with respect to document fields that are *not* identified by Relator by Tuesday, June 21.  Caremark will make reasonable efforts to investigate late-identified fields, but, as a matter of logistics, and given the complexities of Topic 20, it simply cannot commit to complete an assessment of burden or an investigation of the field identified—let alone to prepare its representative—within the four business days (or less) that would be afforded.[7]  Given that the

---

[6] Specifically, the parties have agreed that "within the topic of Caremark's GER tracking with respect to CVS Pharmacy (Topic 20), if, by Tuesday, June 21, Relator identifies the specific fields within any specific documents (including the four currently listed in Topic 20) about which Relator requests that Caremark's Rule 30(b)(6) designee be prepared to *specifically* testify, then by Friday, June 24, Caremark will assess the burden of so preparing its designee and notify Relator whether, pursuant to that burden, it objects to preparing such testimony."

[7] In the parties' final exchange of their respective portions of this submission, Relator inserted the comment that if Caremark's designee's deposition "were to be postponed, that would affect whatever burden Caremark could claim to materials being identified after June 21, 2022."  To be clear, there is no present reason why Mr. Blake's deposition would not go forward as scheduled. In any event, the burden to Caremark associated with any late-identified document fields would depend on how close in time to the deposition those fields are identified.

parties have agreed to define Topic 20 in part by reference to sufficient advance disclosure of specific fields, late-identified items would not provide any legitimate grounds to postpone the deposition, hold it open, or object to it on the basis of the witness's unpreparedness to testify to "specifics" of the late-identified items.  All of that said, Relator has promised to apply the "best of her ability" to avoid that scenario.  Accordingly, potential disputes regarding potential late-identified items are entirely hypothetical at this stage, and thus there is no need for the Court to make any ruling on Topic 20 at this time.  Caremark therefore is aligned with Relator's representation that "the parties hope to resolve any dispute regarding Topic 20 through further meet and confer without Court intervention."

Dated: June 17, 2022

/s/ *Sarah L. O'Connor*
Enu A. Mainigi (*Pro Hac Vice*)
emainigi@wc.com
Craig D. Singer
csinger@wc.com
Holly M. Conley (*Pro Hac Vice*)
hconley@wc.com
Daniel M. Dockery (*Pro Hac Vice*)
ddockery@wc.com
Sarah L. O'Connor (*Pro Hac Vice*)
soconnor@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel:  202-434-5000
Fax:  202-434-5029

*Counsel for Defendants*

/s/ *Caitlin G. Coslett*
BERGER MONTAGUE PC
William H. Fedullo
David F. Sorensen
Susan Schneider Thomas
Joy P. Clairmont
Caitlin G. Coslett
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
E-mail: sthomas@bm.net
dsorensen@bm.net
jclairmont@bm.net
ccoslett@bm.net
wfedullo@bm.net

Natalie Finkelman Bennett
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
E-mail: nfinkelman@millershah.com

Jayne A. Goldstein
MILLER SHAH LLP
1625 N. Commerce Parkway, #320
Fort Lauderdale, FL 33326
Telephone: (866) 849-7545
Facsimile: (866) 300-7367
Email: jagoldstein@millershah.com

*Attorneys for Plaintiff-Relator*