

CAITLIN G. COSLETT / *SHAREHOLDER*
d 215.875.3057 | ccoslett@bm.net

September 6, 2022

**VIA ECF**
The Honorable Mitchell S. Goldberg
United States District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

    Re:    *United States, ex rel. Behnke v. CVS Caremark Corp.*, No. 14-cv-00824

Dear Judge Goldberg:

    Relator respectfully responds to CVS Pharmacy's September 1, 2022 Letter (ECF 244) regarding the scope of the Rule 30(b)(6) deposition of CVS Pharmacy.

    CVS Pharmacy has provided no basis to refuse to provide 30(b)(6) testimony regarding "(1) the negotiation of generic effective rate caps or targets between Caremark and CVS; and (2) the implementation of those targets once set"—the same topics on which the Court has allowed Relator to question former Caremark executive Ms. Eva Boratto (ECF 236 ¶ 9).[1]  Relator has not yet taken a single CVS Pharmacy deposition; the CVS Pharmacy 30(b)(6) subpoena was timely served on June 3, 2022; and the CVS Pharmacy 30(b)(6) deposition will be one of Relator's agreed-to 15 depositions.  The sought deposition is proportional given that Caremark's counsel (who also represent Caremark-related entity CVS Pharmacy) have repeatedly argued that Relator's case as to drugs dispensed through CVS Pharmacy is purportedly "missing a key component" because there was a Caremark-CVS Pharmacy *budgeted* (or *targeted*) generic effective rate (discount rate) instead of a *guaranteed* generic effective rate.  *E.g.*, ECF 239, Am. Tr. of Aug. 24, 2022 Hrg. 51:23-52:4, 52:24-53:4.

    Caremark argues that the purported distinction between a budgeted or targeted generic effective rate (the percentage discount below the list price (Average Wholesale Price, or AWP)) and a guaranteed or contracted rate has some legal significance for Relator's claims, but Caremark is both wrong and premature to contend that this argument forecloses discovery.  Evidence demonstrates that the generic effective rate between Caremark and CVS Pharmacy was negotiated between the two related entities and drove the prices that were "actually paid" by Caremark to CVS, just as with the other pharmacies (Walgreens and Rite Aid).  As with Walgreens and Rite Aid, though, the prices reported to the government (and thus paid by the government) were higher

---

[1] CVS Pharmacy's agreement to provide certain testimony (ECF 244 at 1 n.1) solves nothing because there are only two agreed topics, neither of which addresses the Caremark-CVS Pharmacy generic effective rate (one relates to the authenticity of CVS Pharmacy documents and the other addresses the means by which CVS Pharmacy received payment, credit, or records credit from Caremark for generic drugs).  Nor is Caremark-related entity CVS Pharmacy entitled to "heightened protection," especially in light of the limited discovery being sought.  *See* ECF 230 at 2-3 (citing cases).



than the prices Caremark actually paid CVS Pharmacy pursuant to the CVS Pharmacy negotiated generic effective rate.

Despite defense counsel's oft-repeated argument that there is a dispositive difference between the price reporting for drugs dispensed through Walgreens and Rite Aid, on the one hand, and CVS Pharmacy, on the other hand, there has been no legal analysis or expert testimony to support Caremark's position, and no ruling in its favor on this issue.  Contrary to Caremark's position, whether the generic effective rate that Caremark and CVS Pharmacy agreed to was budgeted/targeted, or contractual/guaranteed, is irrelevant to the falsity of the inflated drug prices Caremark reported or caused to be reported to the government.  *See, e.g.*, ECF 239, Am. Tr. of Aug. 24, 2022 Hrg. 49:2-50:5.  The generic drug prices reported to the government were different and higher than the prices Caremark actually paid to CVS Pharmacy and Relator is entitled to develop further evidence to make her case.   Relator has developed evidence on this point, but again, has not yet taken any depositions of CVS Pharmacy.

Nor is the CVS Pharmacy deposition duplicative, even if Relator deposes Ms. Boratto.  Caremark/CVS Pharmacy counsel's own September 1 letter explains why: "Unlike a CVS Pharmacy *corporate* designee, as an individual fact witness Ms. Boratto is under no obligation to undertake any effort to learn new facts or refresh her recollection before a deposition."  ECF 244 at 2 (emphasis in original).  That is exactly Relator's point:  Ms. Boratto may not know or remember relevant information about the negotiation and implementation of the Caremark-CVS generic effective rates during the relevant time period.

Relator has not waived her request for testimony from CVS Pharmacy regarding the Caremark-CVS Pharmacy budgeted or targeted generic effective rates.  *See* ECF 230 at 2-9 (briefing dispute); ECF 233 at 2 (Aug. 19, 2022 letter seeking this testimony); ECF 239, Am. Tr. of Aug. 24, 2022 Hrg. 56:17-57:2, 88:4-14 (seeking this testimony).

For the reasons set forth above, Relator respectfully requests that the Court enter the attached proposed order allowing Relator to obtain from CVS Pharmacy testimony on the same topics on which the Court allowed Relator to seek testimony from Ms. Boratto (as well as the agreed-to topics).  Respectfully, if, notwithstanding the Court's prior ruling setting the scope of Ms. Boratto's deposition, anything remains unclear about the significance of Relator's sought discovery regarding the Caremark-CVS Pharmacy targeted (or budgeted) generic effective rate given Caremark's asserted defense as to drugs dispensed by CVS Pharmacy, Relator requests a brief hearing (in person or telephonic) to address this issue.  There has been no summary judgment motion filed addressing Relator's claims as to drugs dispensed by CVS Pharmacy, much less decided.  Therefore, as discussed at the August 24 hearing, Relator will be prejudiced if not allowed to obtain this relevant, proportional and focused discovery.

Respectfully,

/s/ Caitlin G. Coslett