IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **SARAH BEHNKE,**<br><br>*Plaintiff*,<br><br>v.<br><br>**CVS CAREMARK CORPORATION** *et al.*,<br><br>*Defendants*. | **Civil Action**<br><br>**No. 14-cv-824** |

**ORDER**

**AND NOW**, this 20th day of September, 2022, upon consideration of letters filed by the parties concerning a dispute over the scope of a noticed deposition (ECF Nos. 230, 241, 244, and 254), I find as follows:

**I.    PROCEDURAL BACKGROUND**

1. This is a qui tam litigation under the False Claims Act, 31 U.S.C. § 3729 et seq. On August 25, 2022, I permitted a short extension of fact discovery to October 21, 2022.

2. Plaintiff Sarah Behnke, as Relator for the United States and America ("Relator'), and non-party CVS Pharmacy, Inc. ("CVS") dispute the scope of a Rule 30(b)(6) deposition that Relator plans to take of CVS. The deposition was timely noticed before the original July 15, 2022 close of fact discovery, and Relator and CVS agree that the deposition will take place. Relator and CVS disagree as to whether certain topics should be covered in the deposition.

3. Relator and CVS first raised this dispute by a joint letter on July 8, 2022. By order of July 11, 2022, I granted Relator's unopposed request to take this and other depositions out of time and held the dispute regarding the scope of the CVS Rule 30(b)(6) deposition under


advisement pending a discovery conference. (ECF No. 231.) That conference took place on August 24, 2022 and covered many discovery topics. The CVS deposition was mentioned, but neither Relator nor CVS specifically asked for a ruling on the scope dispute during the conference.

4. Following the conference, Relator and CVS re-raised the scope dispute by filing several letters. (ECF Nos. 421, 244, and 245.)

## II. DISPUTED TOPICS

5. CVS objects to its Rule 30(b)(6) witness testifying about "the 'negotiation' and 'implementation' of [generic effective rate ('GER')] targets between CVS and Caremark." (ECF No. 244 at 1.) While CVS does not identify which of the noticed topics this corresponds to, it appears to correspond to topics 4 and 5:

> TOPIC 4: Any negotiations or discussions with Caremark concerning Caremark's guaranteeing, promising, or representing to CVS Pharmacy any generic price term (including any generic effective rate(s)) regarding generic drugs dispensed to enrollees of Caremark's PBM clients, regardless of whether the price terms were, or were not, contractually set or memorialized in a written contract.
>
> TOPIC 5: Any negotiations or discussions with Caremark concerning, at a high level, Caremark's setting and management of MAC prices for generic drugs for Caremark to pay CVS Pharmacy at the point of sale on behalf of Caremark's PBM clients, including any explanation offered by Caremark to CVS Pharmacy concerning the same.

6. As I understand Relator's fraud claims, these topics are part of Relator's allegation that Defendant Caremark negotiated aggregate prices with pharmacies (such as CVS) that covered both Medicare and non-Medicare claims but reported only Medicare claims to the Centers for Medicare and Medicaid Services. Relator contends that this was a false report because discounts Caremark received on non-Medicare claims offset overpayments on Medicare claims. In the language quoted above, a "generic effect rate" is a type of aggregate pricing term.

7. CVS objects to producing testimony regarding negotiation and implementation of generic effective rates because it contends that preparing a witness to testify regarding this subject

would be unduly burdensome. CVS also points out that I denied Relator's request to obtain document discovery on the same subject from Caremark.

8.     Relator responds that aggregate pricing terms, such as generic effective rates, are fundamental to her fraud claims. In addition, negotiations over such terms are relevant in Relator's view because they would show whether Caremark and CVS viewed Medicare and non-Medicare prices as separate transactions or as part of an aggregate whole. Relator further notes that Caremark witnesses have given conflicting testimony as to whether Caremark and CVS used aggregate pricing terms, and that testimony from CVS is therefore needed to determine which Caremark witnesses to believe. For example, Relator claims that Caremark has generally denied that it had a contract with CVS providing for an aggregate pricing term, but Caremark witnesses have described "budgeted" agreements aimed at achieving a similar result.

### III.    LEGAL STANDARD

9.     The scope of discovery includes any matter that is relevant to any party's claim or defense, not privileged, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In evaluating this standard, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.

### IV.    DISCUSSION

10.     CVS first argues that the dispute is not properly before me because Relator did not ask for a ruling on the scope of the deposition at the discovery conference. CVS does not dispute that Relator's Rule 30(b)(6) notice and corresponding Rule 45 subpoena were timely served more than a month before the close of fact discovery. A subpoenaed non-party must either comply with the subpoena or move to quash it. See Guardian Life Ins. Co. v. Service Corp. Int'l, No. 88-cv-

395, 1989 WL 3496, at *2 (E.D. Pa. Jan. 17, 1989). CVS effectively did the latter by way of it and Relator's July 8, 2022 joint letter. However, I did not issue a ruling quashing the subpoena and CVS did not ask for such a ruling at the discovery conference. Therefore, CVS has not obtained relief from the subpoena, and I will interpret the parties' present dispute as CVS's request to limit the subpoena's scope.

11. I next consider CVS's argument that the scope of the Rule 30(b)(6) notice is overly burdensome and should be limited. As to relevance, the information sought in topics 4 and 5 is relevant to Relator's fraud allegations for the reasons explained above. I also note that this is the only Rule 30(b)(6) deposition Relator will take of CVS, and that, therefore, testimony from this witness is unlikely to be cumulative. These factors weigh in favor of finding that the proposed testimony would be proportional to the needs of the case.

12. As to burden, while I denied Relator's request to obtain document discovery on this subject from Caremark, that was based on my finding that negotiations between Caremark and pharmacies potentially encompassed a tremendous volume of documents and that starting such a significant investigation so late in the discovery process was not proportional to the needs of the case. By contrast, CVS has not shown that it would need to review a similarly large quantity of documents to reasonably prepare a witness to testify regarding its negotiations with Caremark.

**WHEREFORE**, it is hereby **ORDERED** that the deposition of non-party CVS Pharmacy, Inc. shall include noticed topics 4 and 5.

BY THE COURT:

 /s/ Mitchell S. Goldberg
**MITCHELL S. GOLDBERG, J.**