

**CAITLIN G. COSLETT** / *SHAREHOLDER*
d 215.875.3057 | ccoslett@bm.net

October 21, 2022

**VIA ECF**
The Honorable Mitchell S. Goldberg
United States District Court
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

    Re:    *United States ex rel. Behnke v. Caremark Corp.*, No. 14-cv-00824

Dear Judge Goldberg:

    Relator writes to request that the Court compel Caremark to comply with Paragraph 5 of the Court's August 25, 2022 Order (ECF No. 236) by producing documents memorializing the agreed upon aggregate price for generic drugs dispensed to Aetna and SilverScript beneficiaries by CVS Pharmacy, that is, documents showing the numerical value(s) of the agreed-to generic effective rate between Caremark and CVS Pharmacy.  In the alternative, Relator requests that the Court bar Caremark from contesting Relator's evidence, including her experts' conclusions, regarding the agreed-to generic effective rate (including the budgeted or targeted generic effective rate) between Caremark and CVS Pharmacy.

    Pursuant to the Court's August 25, 2022 Order, on September 2, 2022, Relator served a targeted document request on Caremark seeking "[d]ocuments that memorialize agreement(s) between CVS Pharmacy and Caremark concerning the generic effective rate caps or targets for generic drugs dispensed by CVS Pharmacy to beneficiaries of Caremark's PBM Clients during the relevant time period."  Caremark has not produced a single document in response.  After further meet and confer, Relator sent Caremark a narrowed proposed search string, to which Caremark did not respond.  Accordingly, Relator now asks the Court to compel Caremark to run the single, very targeted search that she proposed to Caremark:

> ((((target* OR budget*) pre/3 (GER OR "generic effective rate" OR "generic effective rates" OR cap)) w/5 ("CVS Pharmacy" OR "CVS Retail"), <u>excluding</u> all documents hit upon by prior searches Caremark has run in this case.[1]

This search should be run in: (1) the emails and files of Ms. Boratto, Mr. Gugliuzza, Mr. Schmidt, and Mr. Denton (since these individuals were involved in negotiating, or received, the Caremark-

---

[1] "Pre/3" means "before, and within three words," and "w/5" means "within five words."  An asterisk (*) is a root extender and means, for example, that "target*" captures "targets," "targeted," etc.  This string is narrowly focused to hit upon documents related to the CVS Pharmacy (also referred to by Caremark as "CVS Retail") targeted or budgeted generic effective rate (also referred to as a "GER").  Caremark has not provided hit reports for this search or proposed any revisions to this search.



CVS Pharmacy generic effective rate, according to testimony in this case) and (2) in a location identified in documents Caremark produced in this case, T:\DATA\PHARMACY GUARANTEE TRACKING\CVS\, which appears likely to contain relevant documents based on the name of the filepath itself and based on the context of the documents containing this filepath.  Additionally, Caremark should produce the CVS Pharmacy and Caremark budget documents that contain the generic effective rate, according to Ms. Boratto's testimony.[2]  Relator requests that this search be run for only a two-and-a-half-year period running from July 1, 2010 to January 31, 2013.

Relator's request is proportional because Ms. Boratto, former Chief Accounting Officer and then Chief Financial Officer at Caremark, testified on October 7, 2022 that Caremark and CVS Pharmacy had an agreed generic effective rate during the 2011 to 2016 time period (Boratto Tr. at 17:13-23), but CVS Pharmacy's 30(b)(6) witness Ms. Bernstein testified yesterday that Elizabeth Ferguson, a CVS attorney, told Ms. Bernstein that "CVS and Caremark did not have an agreed-upon budgeted Generic Effective Rate" during the 2010-2012 time period.  Bernstein Tr. at 64:18-65:7.  Given this conflicting testimony regarding the generic effective rate during this period, Relator is entitled to documents reflecting any agreed-upon Caremark-CVS Pharmacy Generic Effective Rate(s) during the 2010-2012 time period.[3]

In addition, Relator addresses several lingering discovery issues.  First, Relator requests that the Court compel Defendants to promptly provide responses to the Interrogatories that the Court previously ruled were premature contention interrogatories (Interrogatories Nos. 16, 21, and 22).  *See* ECF 207, at 6, 8-9.  Relator is serving today lengthy and detailed responses to Defendants' interrogatories, and there is no basis for Caremark's continued refusal to provide responses to Relator's contention interrogatories.[4]

Second, Relator wishes to raise Caremark's unreasonable failure to produce several additional documents.  Although Relator believes Caremark should be compelled to produce these documents now, as a routine document production clean-up, Relator believes that the Court may defer compelling production of these documents until such time as Caremark raises any arguments or defenses based on, or materially implicating, these missing documents.  The missing documents include the draft Direct and Indirect Remuneration ("DIR") Reports that Caremark sent to Aetna,

---

[2] Boratto Tr. at 29:10-11 ("CVS Pharmacy GER would have been put in our [Caremark's and CVS Pharmacy's] respective budgets."); *id.* at 30:15-16 (when asked how to find the Caremark-CVS Pharmacy budgeted generic effective rate, Ms. Boratto testified: "I would have gone back to the budget documents.").
[3] Ms. Bernstein admitted she did not speak to Ms. Boratto or review her testimony that there was a generic effective rate in effect during the 2011 to 2016 time period. Bernstein Tr. at 65:8-66:8. Ms. Bernstein also admitted that "CVS had a budgeted Generic Effective Rate" during the 2010 to 2012 time period, but testified she "d[idn]'t know if that specific rate was discussed with Caremark" (*id.* at 63:4-13), and that she "did not learn anything specifically about the year or the negotiations in the year 2011." *Id.* at 34:7-16.  In addition, Ms. Boratto testified that target rates were set at the corporate or company level (Boratto Tr. at 18:1-10); and SEC reporting for both the Caremark and CVS Pharmacy segments would take that target GER into account.  *Id.* at 21-23.  *See also id.* at 26:8-11 ("we establish budget targets looking at the total company and achieving our goals for the total enterprise").
[4] Relator has met and conferred with Caremark, which has refused to provide responses.

October 21, 2022  
Page 3 of 3



which Aetna in turn finalized and sent to the Government.[5] Aetna initially agreed to produce these draft reports in its written responses to the subpoena to Aetna, but Aetna/Caremark's counsel later claimed that there were no such draft reports, a representation on which Relator relied. However, Aetna's own 30(b)(6) witness testified on October 18, 2022 that Caremark sent Aetna populated versions of the Direct and Indirect Remuneration Report template (Passuello Tr. 68:21-22), *i.e.*, *drafts*. The draft reports—the prepopulated reports Caremark sent to Aetna—should be produced. Caremark has also failed to produce certain attestations provided by Caremark to SilverScript and Aetna attesting to the accuracy of the price information Caremark reported to SilverScript and Aetna, which was then in turn reported to the government.[6] These attestations are relevant because Caremark falsely reported too-high generic prices to Aetna and SilverScript for reporting to the Government, contrary to Caremark's attestations. Similarly, SilverScript and Aetna—both entities that are affiliated with Caremark and all represented by the same counsel—should produce a few missing attestations that these entities provided to the government attesting to the accuracy of Part D plan pricing information reported to the government.[7]

\* \* \*

Finally, Relator notes that Caremark has not yet produced the lists of Aetna and SilverScript contract plans corresponding to the totals for Medicare Part D generic drug purchases reflected in the pharmacy reconciliations, as required by Paragraph 3 of the Court's August 25, 2022 Order. Relator's experts will evaluate these lists, when received, along with the data and contract-plan information obtained at the October 13 SilverScript deposition and at the October 18 Aetna deposition, and Relator will advise the Court if any additional issues arise that need to be addressed.

Respectfully,

/s/ Caitlin G. Coslett

---

[5] These Direct and Indirect Remuneration Reports include False Claims because they did not disclose or report that the generic prices actually paid to the Rite Aid, Walgreens, and CVS pharmacies were *lower* than the prices reported to the government.

[6] These attestations were requested, and Caremark has produced 2010 and 2011 "Detailed DIR Attestations" to SilverScript but has not produced 2012-2016 Detailed DIR Attestations to SilverScript. It has also not produced Detailed DIR Attestations to Aetna for years 2011-2014.

[7] These attestations were also requested, and Aetna produced a 2014 PDE/DIR executed attestation but has not produced executed versions of the 2011-2013 PDE/DIR attestations and has not produced Detailed DIR Attestations for 2011-2014. SilverScript did not produce a PDE/DIR Attestation to CMS for 2011 or Detailed DIR Attestations to CMS for 2010-2013. ("PDE/DIR" refers to prescription drug event ("PDE") data and DIR Reports, both submissions made to the government.)