IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **SARAH BEHNKE,**<br><br>　　　　　*Plaintiff*,<br><br>　　　　　*v.*<br><br>**CVS CAREMARK CORPORATION** *et al.*,<br><br>　　　　　*Defendants.* | **Civil Action**<br><br>**No. 14-cv-824** |

## ORDER

**AND NOW**, this 1ˢᵗ day of May, 2024, upon consideration of Defendants' Motion for Reconsideration, and the responses and replies thereto, I find as follows:

1.　Relator Sarah Behnke, asserting the interests of the United States of America, has sued CVS Caremark Corporation and related entities (collectively "Caremark") under the False Claims Act, alleging that Caremark, a pharmacy benefits manager (PBM), caused health insurers to misreport how much Caremark spent to obtain prescription drugs for Medicare beneficiaries.

2.　Following discovery, both parties moved for summary judgment on multiple issues. In arguing for summary judgment on the issue of falsity, Relator asserted Caremark would contract with pharmacies to pay a fixed average price for drugs (relative to those drugs' average wholesale prices) while setting its own individual sale price for each transaction. Medicare regulations required Caremark's clients to report what Caremark "actually paid" for drugs, defined as the amount "actually incurred" net any "direct or indirect remuneration." 42 C.F.R. § 423.308 (effective June 7, 2010). Relator posited the guaranteed average price was "actually paid" because it was how much money would leave Caremark's pocket for each purchase, and Caremark's chosen individual

1

sale price was not "actually paid" because Caremark would make up any difference between the individual sale price and the guaranteed average by the end of the contract term. According to Relator, this caused Caremark's health insurer clients to falsely report individual sale prices as the true cost of drugs. Relator also alleged Caremark skewed individual sale prices to be higher on average for Medicare than non-Medicare purchases (relative to those drugs' average wholesale prices), causing the government to overpay in Medicare subsidies and demonstrating Caremark's conscious wrongdoing, but Relator did not seek summary judgment on those issues.

3.  Caremark responded that Medicare regulations allowed health insurers to report individual sale prices, purportedly by industry custom, and that the government's price-reporting process was incompatible with guaranteed average prices. Caremark acknowledged it had adjusted Medicare individual sale prices to be higher on average than non-Medicare relative to average wholesale prices, but insisted this "spread" occurred for "perfectly appropriate, market-based reasons" related to Medicare beneficiaries needing "more expensive drugs." (ECF No. 294 at 9.) Caremark also argued it was irrelevant whether Medicare prices were better or worse than non-Medicare prices because the government let private insurers negotiate prices on their own, requiring only that the deal struck be accurately reported. (See Caremark's Facts, ECF No. 275-2, ¶¶ 403-404; Norwalk Opening Report ¶¶ 235-267.)

4.  I denied both motions in substantial part, but granted partial summary judgment in Relator's favor, ruling that Caremark's guaranteed average prices were what it "actually paid" under the governing regulation, thus finding Caremark's clients' reports of individual sale prices to be false. I did not rule on whether Caremark had skewed Medicare individual sale prices to be higher on average (relative to average wholesale prices) because doing so was unnecessary to resolve the issues raised by the parties in their summary judgment motions. With regard to

Caremark's position that any spread reflected market forces, I concluded that "[a]ssuming these facts are true, … they would not affect what Caremark 'actually paid'" because "[w]hether intentionally or not, Caremark incurred the same negotiated average price on each purchase, [Medicare] and [non-Medicare] … ." (Opinion at 62.)

5. Caremark now moves for reconsideration of my partial grant of summary judgment to Relator. Although Caremark does not presently dispute that its guaranteed average prices were the actual cost of purchasing drugs, Caremark takes issue with statements in my Opinion describing Relator's allegation of a "spread" between Medicare and non-Medicare individual sale prices. According to Caremark, if variation in drugs' average wholesale prices is counted, it was possible to price drugs so that Medicare individual sale prices would exceed guaranteed average prices despite being lower, for each type of drug, than the corresponding commercial individual sale price. This could occur, Caremark reasons, if it happened to set individual sale prices higher (relative to average wholesale prices) for the kinds of drugs Medicare beneficiaries need. Caremark's reconsideration motion does not say that this alignment of prices actually occurred, just that it is not technically impossible. Caremark asserts the possibility of no spread between Medicare and non-Medicare prices undermines my conclusion that prices reported by Caremark's clients were false.

6. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest

injustice." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). "Such motions may not be used to revisit or raise new issues with the benefit of the hindsight provided by the court's analysis." Geneva Coll. v. Sebelius, 929 F. Supp. 2d 402, 452 (W.D. Pa. 2013) (quotation marks omitted).

7. I will deny Caremark's motion for reconsideration because it is rests on a new argument not raised at summary judgment and is, in any event, not germane to the sole issue on which I granted partial summary judgment. Caremark's prior briefing acknowledged a spread between Medicare and non-Medicare individual sale prices (relative to average wholesale prices), responding only that the spread was legitimate. And Caremark argued that, in any event, Medicare regulations were agnostic to the fairness of the deal because they required only accurate reporting, not good prices. Caremark's new argument that a spread was illusory or somehow relevant to falsity because it hinged on variation in average wholesale prices is a new argument that may not be raised for the first time on reconsideration. In any event, this argument is not addressed to the regulatory definition of "actually paid" or the actual cost of purchasing drugs, which is the sole issue on which I granted partial summary judgment to Relator.

**WHEREFORE**, it is hereby **ORDERED** that Caremark's motion for reconsideration (ECF No. 341) is **DENIED**.

BY THE COURT:

*/s/ Mitchell S. Goldberg*
**MITCHELL S. GOLDBERG, J.**