IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **SARAH BEHNKE,**<br><br>　　　　　*Plaintiff*,<br><br>　　　　　v.<br><br>**CVS CAREMARK CORPORATION** *et al.*,<br><br>　　　　　*Defendants*. | **Civil Action**<br><br>**No. 14-cv-824** |

### MEMORANDUM OPINION

**GOLDBERG, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**July 30, 2024**

　　　　This qui tam lawsuit under the False Claims Act involves allegations that Defendants CVS Caremark Corporation and related entities (collectively "Caremark") caused health insurers to request inflated subsidies under Medicare Part D by reporting prescription drug spending in a way that conflicted with applicable regulations. Following my ruling on the parties' cross-motions for summary judgment, Caremark has requested that I certify my interpretation of those regulations for interlocutory appeal. For the reasons set out below, Caremark's motion will be denied.

**I.　　PROCEDURAL HISTORY**

　　　　Relator Sarah Behnke, asserting the interests of the United States of America, brought this lawsuit against Caremark in 2014 under the False Claims Act, alleging that Caremark, a pharmacy benefits manager (PBM), caused health insurers to misreport how much Caremark spent to obtain prescription drugs for Medicare beneficiaries. The case remained under seal while the Government

1

investigated. Caremark then filed a motion to dismiss in August 2018, which was denied, and the case proceeded to discovery.

After discovery was complete, both parties moved for summary judgment on multiple issues. In arguing for summary judgment on the issue of falsity, Relator asserted Caremark would contract with pharmacies to pay a fixed average price for drugs while setting its own individual sale price for each transaction. Regulations promulgated by the Centers for Medicare and Medicaid Services (CMS) required Caremark's clients to report what Caremark "actually paid" for drugs, defined as the amount "actually incurred" net any "direct or indirect remuneration." 42 C.F.R. § 423.308 (effective June 7, 2010). Relator posited the guaranteed average price was "actually paid" because it was how much money would leave Caremark's pocket for each purchase. By contrast, Caremark's chosen individual sale price was not "actually paid" in Relator's view because Caremark would make up any difference between the individual sale price and the guaranteed average by the end of the contract term.

Caremark responded with a contrary interpretation of CMS's regulation, under which health insurers could report individual sale prices irrespective of a guaranteed average price. Caremark also asserted it was industry custom to report only individual sale prices, and that the government's price-reporting framework was incompatible with guaranteed average prices.

I denied both motions in substantial part, but granted partial summary judgment in Relator's favor on the issue of falsity. I interpreted CMS's regulation to mean that "[i]f a PBM contracted with a pharmacy to pay at least a certain average price across all drug purchases …, and … paid no more than that guaranteed average," then the guaranteed average was the price "actually paid." (Opinion, ECF No. 339, at 57.) I concluded that because Caremark's clients reported sometimes-higher individual sale prices, those reports were false. (Id.)

Caremark has moved to certify my interpretation of CMS's regulation for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), arguing that whether health insurers were required to report guaranteed average prices is a novel issue of industry-wide significance. Relator opposes certification and responds that the application of CMS's regulation to guaranteed average pricing is fact-bound and relevant only in the context of Caremark's unique pricing scheme.

## II. LEGAL STANDARD

The purpose of an interlocutory appeal is to avoid "potential for harm to the litigant pendente lite or similar potential for causing a wasted protracted trial if it could early be determined that there might be no liability." Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974). But it is not meant to "substitute wholesale appellate certainty for trial court uncertainty" in the ordinary case. Link v. Mercedes-Benz of N. Am., Inc., 550 F.2d 860, 863 (3d Cir. 1977). Thus, interlocutory appeals should be granted "sparingly." Milbert v. Bison Lab'ys, Inc., 260 F.2d 431, 433 (3d Cir. 1958).

An interlocutory appeal must meet three requirements: (1) a "controlling question of law"; (2) "substantial ground for difference of opinion"; and (3) the potential for "an immediate appeal … [to] materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

A "controlling question of law" is one "which, if erroneous, would be reversible error on final appeal." Katz, 496 F.2d at 755. This category excludes most, though not all, discretionary and fact-based rulings. Id.; Link, 550 F.2d at 863.

A "substantial ground for difference of opinion" is most likely to be found when the issue is not "settled by controlling authority." Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co., No. 05-cv-281, 2011 WL 1044864, at *3 (E.D. Pa. Mar. 23, 2011). But not every issue of "first impression" is appropriate for certification, Valeant Pharms. Int'l, Inc. v. AIG Ins. Co. of

3

Canada, No. 18-493, 2023 WL 113959, at *4 (D.N.J. Jan. 5, 2023). Novel issues are common in litigation and should usually be resolved by an appeal after final judgment. Shaup v. Frederickson, No. 97-cv-7260, 1998 WL 800321, at *3 (E.D. Pa. Nov. 17, 1998).

Predicting whether an appeal could "materially advance the ultimate termination of the litigation" "necessarily requires prognostication." Piazza v. Major League Baseball, 836 F. Supp. 269, 271 (E.D. Pa. 1993). A court should evaluate "settlement possibilities, … the potential length of a possibly avoidable trial, and similar maters," Katz, 496 F.2d at 755, and attempt to "balance the possible results of appeal with the resulting costs." Piazza, 836 F. Supp. at 271.

### III.  DISCUSSION

Caremark has identified the issue for interlocutory appeal as whether CMS's definition of "actually paid" costs in 2010 through 2016 covered guaranteed average pricing terms, in cases where average prices differed from individual sale prices. For purposes of deciding whether to allow an interlocutory appeal, I will assume that this is a controlling question of law with substantial grounds for difference of opinion. But, for the reasons set forth below, I nevertheless conclude that an interlocutory appeal is not appropriate because it is unlikely to "materially advance the ultimate termination of the litigation." § 1292(b).

"Certification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set." Katz v. Live Nation, Inc., No. 09-cv-3740 MLC, 2010 WL 3522792, at *3 (D.N.J. Sept. 2, 2010). And it is least likely to advance the litigation "where discovery is complete and the case is ready for trial." Knipe v. SmithKline Beecham, 583 F. Supp. 2d 553, 600 (E.D. Pa. 2008) (alteration omitted). This case falls into the latter category.

4

Relator brought her claims 10 years ago in 2014, alleging wrongdoing as far back as 2010. Over the past decade, the parties have litigated a motion to dismiss, engaged in substantial and contentious discovery with over a dozen depositions, and litigated cross-motions for summary judgment supported by over 400 exhibits. An appeal now would cause additional delay, especially given the voluminous record, technical subject matter, and wide-ranging factual disputes. I note that Caremark itself declined to seek interlocutory review following denial of its motion to dismiss six years ago on similar grounds. Cf. Fair Hous. Rts. Ctr. in Se. Pennsylvania v. Morgan Properties Mgmt. Co., LLC, No. 16-cv-4677, 2018 WL 4489653, at *5 (E.D. Pa. Sept. 19, 2018) (declining to certify an interlocutory appeal when one could have been taken pre-discovery).

Instead, "what is most likely to advance the ultimate termination of this lawsuit is the scheduling of a trial." United Nat. Ins. Co. v. Aon Ltd., No. 04-cv-539, 2008 WL 942577, at *3 (E.D. Pa. Apr. 7, 2008). Caremark will then have an opportunity to litigate its interpretation of CMS's regulation before the Third Circuit Court of Appeals "with the benefit of a comprehensive determination of" the facts. Id.

For these reasons, I decline to certify my March 25, 2024 summary judgment Order for interlocutory appeal under § 1292(b).

### IV. CONCLUSION

For the foregoing reasons, Caremark's motion to certify my March 25, 2024 summary judgment Order for interlocutory appeal will be denied.

An appropriate order follows.