IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* SARAH BEHNKE <br><br>          Plaintiffs, <br><br>    v. <br><br> CVS HEALTH CORP., *et al.*, <br><br>          Defendants. | **Civil Action No. 2:14-cv-00824 (MSG)** |

**PLAINTIFF-RELATOR'S BRIEF REGARDING TREBLING
OF DAMAGES AND STATUTORY PENALTIES**

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 2

  A.  Caremark is Liable to the United States For Treble Damages................................. 2

  B.  The Court Should Award an Additional $5,643,000 in Civil Penalties.................. 2

    i.  Caremark is Liable For At Least 513 Violations of the False
        Claims Act .......................................................................................... 3

    ii.  The Court Should Impose an $11,000 Penalty for Each Violation............ 3

  C.  All of the Caremark Defendants Are Jointly and Severally Liable, and
      Liable For Post-Judgment Interest ......................................................... 7

III.  CONCLUSION..................................................................................................... 8

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Cook Cnty., Ill. v. U.S. ex rel. Chandler*,
  538 U.S. 119 (2003) ............................................................................................. 2

*Dunn v. HOVIC*,
  13 F.3d 58 (3d Cir. 1993) .................................................................................... 7

*S.E.C. v. Lipson*,
  129 F. Supp. 2d 1148 (N.D. Ill. 2001) ............................................................... 6

*S.E.C. v. Lipson*,
  278 F.3d 656 (7th Cir. 2002) .............................................................................. 6

*U.S. ex rel. Drakeford v. Tuomey*,
  792 F.3d 364 (4th Cir. 2015) ...................................................................... 4, 5, 7

*U.S. ex rel. Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*,
  5 F.4th 315 (3d Cir. 2021) ............................................................................... 2, 7

*U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*,
  501 F. Supp. 2d 51 (D.D.C. 2007) ................................................................... 4, 5

*U.S. ex rel. Morsell v. Gen Dig., Inc.*,
  712 F. Supp. 3d 14 (D.D.C. 2024) .................................................................... 5, 7

*U.S. v. Americus Mortg. Corp.*,
  2017 WL 4117347 (S.D. Tex. Sept. 14, 2017) .................................................... 7

*U.S. v. Dynamic Visions, Inc.*,
  2022 WL 612709 (D.D.C. Mar. 2, 2022) ............................................................. 6

*U.S. v. Dynamic Visions, Inc.*,
  2024 WL 2991067 (D.C. Cir. June 14, 2024) ..................................................... 6

*U.S. v. Honeywell Int'l Inc.*,
  47 F.4th 805 (D.C. Cir. 2022) ............................................................................. 7

*U.S. v. Speqtrum, Inc.*,
  2016 WL 5349196 (D.D.C. Sept. 23, 2016) ........................................................ 6

*Yates v. Pinellas Hematology & Oncology, P.A.*,
  21 F.4th 1288 (11th Cir. 2021) .................................................................... 2, 5, 7

STATUTES

28 U.S.C. § 1961 ................................................................................................ 1, 7, 8

31 U.S.C. § 3729 ............................................................................................. 1, 2, 3, 8

31 U.S.C. § 3730 ..................................................................................................... 8

Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 5, 104
    Stat. 891 (1990) ................................................................................................ 4

RULES AND REGULATIONS

28 C.F.R. § 85.3 ..................................................................................................... 4

Fed. R. Civ. P. 54 ................................................................................................... 8

## I.      INTRODUCTION

Plaintiff-Relator ("Relator") respectfully files this brief in accordance with Paragraph 6.a of this Court's June 25, 2025 Order, ECF 500 (the "Order"), regarding the mandatory imposition of treble of damages and statutory penalties under the False Claims Act ("FCA").

On June 25, 2025, following an eight-day bench trial, this Court found Caremark[1] liable for violations of the FCA, finding that Relator proved both her presentment claim under 31 U.S.C. §3729(a)(1)(A) and her false statement claim under 31 U.S.C. § 3729(a)(1)(B).  ECF 499 (the "Opinion") at 99-101; Order, ECF 500, ¶¶ 1-2.  The Court found "that the DIR reports submitted by Caremark's Part D sponsors were . . . false"; and awarded "pre-trebling and pre-penalty damages of $95 million."  Opinion, ECF 499, at 100, 105; Order, ECF 500, ¶ 5.

Consistent with the Court's Order and Opinion, the Court should:

1)      Award treble damages of $285 million (three times $95 million) under 31 U.S.C. § 3729(a)(1); and

2)      Award an additional $5,643,000 in civil penalties, for causing the presentment of at least 513 false claims to the United States under 31 U.S.C. § 3729(a)(1)(A).

This will result in a final judgment of $290,643,000, which should be imposed jointly and severally on the Caremark Defendants.

Relator also respectfully requests that the Court's final judgment order include the award of mandatory post-judgment interest pursuant to 28 U.S.C. § 1961.

---

[1] In light of the Court's finding that CVS Health Corporation is not liable (Opinion, ECF 499, at 98; Order, ECF 500, ¶ 3.b), "Caremark" and "Caremark Defendants" herein mean all Defendants other than CVS Health Corporation (Caremark Rx, LLC, CaremarkPCS Health LLC, and CVS Caremark Part D Services, LLC).  *See* 2d Am. Compl. (ECF 114) at, *inter alia*, caption and p.1 (listing Defendants); Stip. and Order re Correction of Parties' Names in Relator's 2d Am. Compl. (ECF 252) (correcting the names of certain Defendants). Relator reserves all appellate rights regarding the Opinion and Order.

## II.    ARGUMENT

### A.    Caremark is Liable to the United States For Treble Damages

It is well-settled that the FCA provides for the <u>automatic</u> trebling of damages.  31 U.S.C.

§ 3729(a)(1) ("any person who" violates the FCA "is liable to the United States Government

for…3 times the amount of damages which the Government sustains because of the act of that

person."); *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 122 (2003) ("If the [FCA]

claim succeeds, the defendant is liable to the Government for . . . treble damages"); *U.S. ex rel.*

*Int'l Bhd. of Elec. Workers Loc. Union No. 98 v. Farfield Co.*, 5 F.4th 315, 336 (3d Cir. 2021)

("Congress intended the FCA to impose a 'civil penalty' plus three times the amount of damages

sustained by the Government"); SJ Op. (ECF 339) at 75-76 ("The False Claims Act permits the

Government to recover, among other penalties, '3 times the amount of damages which the

Government sustains because of' the submission of a false claim.") (quoting 31 U.S.C.

§ 3729(a)(1)).  This trebling is not discretionary—it is "mandated by the FCA."  *Yates v. Pinellas*

*Hematology & Oncology, P.A.*, 21 F.4th 1288, 1314 (11th Cir. 2021).

The Court should treble damages here to $285 million, which is three times the $95

million in pre-trebling and pre-statutory penalty damages the Court found Relator has proven.

Opinion, ECF 499, at 105; Order, ECF 500, ¶ 5.

### B.    The Court Should Award an Additional $5,643,000 in Civil Penalties

Entities that violate the FCA are also liable to the United States for a civil penalty for

each individual violation of the statute.  31 U.S.C. § 3729(a)(1).  As with trebled damages, the

imposition of a civil penalty for each violation is mandatory.  *Chandler*, 538 U.S. at 122 ("If the

[FCA] claim succeeds, the defendant is liable to the Government for a civil penalty . . . for each

violation[.]"); *Farfield*, 5 F.4th at 336 ("Congress intended the FCA to impose a 'civil

penalty'"); *Yates*, 21 F.4th at 1297 ("The FCA mandated the imposition of . . . statutory

penalties."). Here, Relator has proven that Caremark violated the FCA, causing at least 513 false

claims—513 false DIR Reports—to be presented to the United States. *See infra* § II.B.i. For the

reasons discussed below the Court should award a penalty of $11,000 for each violation—for

each false DIR Report—for a total civil penalty of $5,643,000 ($11,000 x 513).

i.    **Caremark is Liable For At Least 513 Violations of the False Claims
Act**

As this Court found, Caremark caused at least false DIR Reports to be submitted to the

Government. Opinion, ECF 499, at 100 ("I find that the DIR reports submitted by Caremark's

Part D sponsors were thus false."); *id.* at 62-66 (the Court found that Relator proved causation as

to SilverScript at summary judgment and proved causation as to Aetna by a preponderance of

evidence at trial); Order, ECF 500, ¶ 2.c (finding Relator has met her burden as to causation).

There were 513 such false DIR Reports in 2013 and 2014 combined (excluding CVS Pharmacy).

PTX-0570; PTX-0571; Dr. Smith, 3/17/25 (Day 5) Tr. 184:6-10 (testifying about PTX-0571).[2]

ii.    **The Court Should Impose an $11,000 Penalty for Each Violation**

For the years where the Court found damages—2013 and 2014—the range of statutorily

mandated civil penalties is $5,500 to $11,000 per individual false claim. 31 U.S.C. § 3729(a)(1);

---

[2] Caremark's expert Mr. Barlag did <u>not</u> disagree with Dr. Smith's count of the number of DIR reports submitted to CMS in connection with the relevant Aetna and SilverScript Medicare Part D plans for Rite Aid and Walgreens in 2013 and 2014, but instead merely argued that some of the counted DIR Reports (and counted PDEs) were purportedly not "false" because they included prices below the applicable Overall Pharmacy GERs (*i.e.*, larger discounts off AWP as compared to the Pharmacy GERs). Written Direct Testimony of Mr. Brett Barlag, Mar. 18, 2025, ¶¶ 54-58, 64. However, the Court rejected the same or similar argument in awarding damages, rejecting Caremark's argument that damages were not properly calculated because they were done in the aggregate and included "plan-year combinations where the plan reported 'better' pricing than the applicable pharmacy GER guarantee." Opinion, ECF 499, at 103-04 (emphasis deleted) & n.22. *See also* ECF 339 (SJ Op.) at 76 (rejecting the same argument in denying Caremark's motion for summary judgment as to damages); *id.* at 68 (because "price reports for Caremark's Part D sponsor clients did not reflect Caremark's negotiated average prices with Walgreens and Rite Aid", "those reports were therefore false"). All 513 Aetna and SilverScript DIR Reports in 2013 and 2014 are false because they collectively reported prices higher in the aggregate than the applicable Overall Pharmacy GERs.

Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 5, 104 Stat. 891 (1990); 28 C.F.R. § 85.3(a)(9).  The Court has discretion in setting the penalty within the range of $5,500 to $11,000 per false claim.  *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 501 F. Supp. 2d 51, 56 (D.D.C. 2007) ("The FCA establishes a mandatory statutory penalty . . . . The determination of the amount of the statutory civil penalties rests within the discretion of the district court.") (awarding maximum civil penalties equal to the upper limit of the range then in effect).

In deciding the appropriate penalty within the statutory range, courts consider "the seriousness of the misconduct, the scienter of the defendants, and the amount of damages suffered by the United States as a result of the misconduct," as well as "the nature of these penalties as deterrents to future conduct."  *Id.* at 57.  "Substantial penalties also serve as a powerful mechanism to dissuade such a massive course of fraudulent conduct."  *U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 389 (4th Cir. 2015) (affirming aggregate civil penalties of more than $119 million where single (pre-trebled) damages were $39.3 million).

For the reasons below, Relator submits that a penalty of $11,000 per false claim is justified by the record in this case.  This would result in an aggregate civil penalty of $5,643,000 (513 false claims (DIR Reports) x $11,000).[3]

**First,** Caremark's conduct was serious.  Knowing that compliance with the 2010 Rule Change would negatively affect its profits, Caremark "masterminded" the Overall Pharmacy GERs and earned "hidden spread" through offsetting Medicare Part D overpayments and commercial underpayments.  Opinion, ECF 499, at, *inter alia*, 84-88.  Caremark also went to great lengths to conceal its conduct, misleading both CMS and Aetna, and directing its

---

[3] The minimum civil penalty that may be imposed is $2,821,500 (513 false claims x $5,500 per false claim).

employees to "stop creating internal documents which show that Caremark is giving deeper discounts on commercial drugs, shallower discounts for Part D drugs, and using the subsequent overpayments on Part D drugs to offset the amount underpaid on commercial drugs." *Id.* at 83; *see also id.* at 77-78, 82-83. Conduct like Caremark's here "make[s] the administration of Medicare more difficult" and threatens to cause "a diminution of the public's confidence in the government." *Yates*, 21 F.4th at 1316 (citations omitted) (upholding a $1,177,000 civil penalty against an individual medical practice, even though the United States had incurred only $755.44 in single damages). The seriousness of Caremark's conduct in undermining Medicare, together with its concealment efforts, justify the imposition of the maximum civil penalty. *Miller*, 501 F. Supp. 2d at 56 ("intricate steps taken to cover up this scheme" justify maximum penalty); *U.S. ex rel. Morsell v. Gen Dig., Inc.*, 712 F. Supp. 3d 14, 27-28 (D.D.C. 2024) (maximum penalties warranted where "misconduct was serious and vast in scope").

**Second**, the maximum civil penalty ($11,000 per false claim) is required for deterrence purposes. *See Morsell*, 712 F. Supp. 3d at 29 (considering the "deterrent value" of penalties and awarding the maximum civil penalty); *Miller*, 501 F. Supp. 2d at 57 ("[T]he Court would be remiss if it did not consider the nature of these penalties as deterrents to future conduct from entities in similar situations to the defendants in this case."); *Tuomey*, 792 F.3d at 389 ("[T]he government has a strong interest in preventing fraud because fraudulent claims make the administration of Medicare more difficult, and widespread fraud would undermine public confidence in the system") (cleaned up). Caremark is the subsidiary of CVS Health Corporation, a massive, vertically-integrated healthcare company with a market capitalization of over $84 billion as of July 9, 2025.[4] That such a dominant industry figure purposely and fraudulently

---

[4] Nasdaq, CVS Health Corporation, https://www.nasdaq.com/market-activity/stocks/cvs (last visited July 9, 2025).

caused the government to make substantial overpayments for a program designed to provide affordable drugs to seniors weighs in favor of a high penalty. *See S.E.C. v. Lipson*, 129 F. Supp. 2d 1148, 1159 (N.D. Ill. 2001), *aff'd*, 278 F.3d 656 (7th Cir. 2002) (in securities fraud case, imposing maximum penalty where defendant's "net worth of over $100 million is large in comparison to the penalty imposed").

**Third**, an $11,000 per violation penalty is justified because the number of violations—at least 513—understates the gravity of Caremark's conduct, which caused significant harm. As the Court found:

> Relator has proven that: (1) Caremark knew it was managing MAC prices to pay more for Part D drugs and less for commercial drugs; (2) Caremark knew that the more it paid for Part D drugs, the less it had to pay for commercial drugs; (3) Caremark knew that if it paid less on commercial drugs, it could earn more spread; (4) Caremark knew that if it earned more spread, it earned more profit; and (5) Caremark knew that any profit earned on the commercial side was thus enabled by inflating the price of Part D drugs.

Opinion, ECF 499, at 88. Caremark's conduct caused the United States to incur $95 million in damages. *Id.* at 105; Order, ECF 500, ¶ 5. This supports a higher civil penalty award. *See U.S. v. Speqtrum, Inc.*, 2016 WL 5349196, at *4 (D.D.C. Sept. 23, 2016) ("a high figure here is appropriate given that the number of claims submitted (216) understates the seriousness of the conduct because each claim lumps together numerous false acts") (awarding approximately $1.3 million in single damages and $2.16 million in civil penalties); *U.S. v. Dynamics Visions, Inc.*, 2022 WL 612709, at *6 (D.D.C. Mar. 2, 2022) ("maximum penalty per claim was warranted because 'Defendant took money from programs intended to service needy patients' and because the number of claims 'understate[d] the severity of Defendant's action' because each invoice 'contain[ed] several false acts.'") (citations omitted), *aff'd* 2024 WL 2991067 (D.C. Cir. June 14, 2024).

**Finally**, an award of $5,643,000 in penalties would constitute only a small fraction of the United States' single damages of $95 million, and so is warranted and consistent with the penalties awarded in other FCA cases.  *See, e.g.*, *Yates*, 21 F.4th at 1316 (affirming civil penalties of $1,177,000 as compared to only $755.54 in single damages); *Tuomey*, 792 F.3d at 389 (affirming $39.3 million in single damages and civil penalties of $119 million); *Farfield*, 5 F.4th at 328 (affirming $159,273.54 in single damages and civil penalties of $577,500); *Morsell*, 712 F. Supp. 3d at 25, 33 (awarding $5.37 million in single damages and $36.8 million in civil penalties); *U.S. v. Americus Mortg. Corp.*, 2017 WL 4117347, at *3, *8 (S.D. Tex. Sept. 14, 2017) (awarding single damages of $7.3 million and penalties of over $1 million against one set of defendants and single damages of $85.6 million and penalties of $11.9 million against another defendant).

### C.    All of the Caremark Defendants Are Jointly and Severally Liable, and Liable For Post-Judgment Interest

Relator also respectfully advises the Court that the Caremark Defendants—Caremark Rx, LLC, CaremarkPCS Health LLC, and CVS Caremark Part D Services, LLC—are jointly and severally liable.  *See, e.g.*, *U.S. v. Honeywell Int'l Inc.*, 47 F.4th 805, 810, 813 (D.C. Cir. 2022) (FCA liability is joint and several).

Additionally, Relator respectfully advises the Court that 28 U.S.C. § 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  The award of post-judgment interest is mandatory.  *See Dunn v. HOVIC*, 13 F.3d 58, 60 (3d Cir. 1993) (noting "the mandatory language of the statute dictating recovery of post-judgment interest").  Section 1961 provides that this mandatory post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve

System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

Further, the interest is computed "daily to the date of payment" and "compounded annually." *Id.*

at § 1961(b).[5]

## III.    CONCLUSION

Relator respectfully submits that this Court should treble damages to $285,000,000,

award an additional $5,643,000 in civil penalties, impose joint and several liability on the

Caremark Defendants, and award post-judgment interest upon entry of judgment pursuant to 28

U.S.C. § 1961(a).


Dated: July 9, 2025                       Respectfully submitted,
                                          */s/ David F. Sorensen*
                                          David F. Sorensen
                                          Caitlin G. Coslett
                                          Susan Schneider Thomas
                                          Joy P. Clairmont
                                          William H. Fedullo
                                          Laurel Boman
                                          BERGER MONTAGUE PC
                                          1818 Market Street, Suite 3600
                                          Philadelphia, PA 19103
                                          Tele: (215) 875-3000/Fax: (215) 875-4604
                                          E-mail: dsorensen@bm.net
                                          ccoslett@bm.net
                                          sthomas@bm.net
                                          jclairmont@bm.net
                                          wfedullo@bm.net
                                          lboman@bm.net

---

[5] After entry of judgment, Relator also will seek reimbursement of her expenses, attorneys' fees, and costs expended in prosecuting this case. The FCA provides that a person who violates the statute "shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages." 31 U.S.C. § 3729(a)(3). When a relator brings an FCA case to the Government that the Government declines to pursue, the relator is similarly entitled to receive "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs" awarded against the defendant. *Id.* at § 3730(d)(2). *See also* Fed. R. Civ. P. 54(d) (the prevailing party may seek costs, expenses and attorneys' fees by motion following entry of judgment). Relator also will seek her statutory relator's share of the judgment from the award to the United States. 31 U.S.C. § 3730(d)(2).

James C. Shah
Natalie Finkelman Bennett
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
E-mail: jshah@millershah.com
nfinkelman@millershah.com

*Attorneys for Plaintiff-Relator*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused a true and correct copy of the foregoing document to be served via ECF on all Counsel of Record.

Dated:  July 9, 2025

*/s/ David F. Sorensen*
David F. Sorensen
